**Robert R. FELTON and Edward J. Egan, Plaintiffs-Appellants,**

v.

**WALSTON AND CO., INC., et al., Defendants-Appellees.**

**No. 210, Docket 74–1581.**

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1974.

Decided Dec. 23, 1974.

Robert R. Felton, Mineola, N. Y., for plaintiffs-appellants.

Richard G. Lyon, New York City (William E. Willis, and Sullivan & Cromwell, New York City, on the brief), for defendants-appellees Marine Midland Bank—New York and Brownstein.

Geoffry R. Handler, New York City (Bruce A. Hecker, and Shea, Gould, Climenko & Kramer, New York City, on the brief), for defendants-appellees Stitching Excerpta Medica (Excerpta Medica Foundation), Medische Referantan (Excerpta Medica) N. V., Infonet (Excerpta Medica-Rescona) N. V., and Eltrac (Infonet) N. V.

Jerold Oshinsky, New York City (Anderson, Russell, Kill & Olick, P. C., New York City, on the brief), for defendants-appellees Riesenbach, Elias, and Sher.

Allan M. Pepper, New York City (Milton Kunen, and Kaye, Scholer, Fierman, Hays & Handler, New York City, on the brief), for defendant-appellee Main, Lafrentz & Co.

Before LUMBARD, WATERMAN and MANSFIELD, Circuit Judges.

LUMBARD, Circuit Judge:

On May 17, 1973, plaintiff Robert R. Felton filed a class-action [1] complaint against defendants Walston & Co., Inc. (Walston), James Nissan (Nissan), Marine Midland Bank—New York (Marine Midland), Joel Doe [2] (Brownstein) and 3 I Co./Information Interscience, Inc. (3 I Co.). In his complaint Felton alleged that Walston, Nissan and Brownstein "employed manipulative and deceptive devices" for the purpose of inducing plaintiff to purchase 3 I Co. stock. There were further allegations, but they too were of a very general nature. Judge Bonsal granted a motion to dismiss this first complaint for failure to comply with rule 9(b) on August 2, 1973, with leave to file an amended complaint.

Plaintiff filed his first amended complaint on August 14, 1973, naming fifteen new defendants in addition to the original five.[3] This complaint went on

---

1. All subsequent complaints in this proceeding were also denominated class actions. Judge Bonsal never formally decided whether to allow the suit to proceed as a class action although he indicated in the order appealed from that he had intended to require the plaintiffs to proceed as individuals. However, since he never actually ruled on the class-action question, we feel that that issue is not properly before us.

2. Later identified as Joel Brownstein.

3. The fifteen new defendants were Gerald L. Brodsky, Maurice Brodsky, Arthur W. Elias,

for thirty-seven pages and contained much evidentiary material. It was answered by each of the original defendants and by new defendants Stitching Excerpta Medica (Stitching) and Main, Lafrentz & Co. (Main, Lafrentz). Following the filing of this complaint Felton, Nissan, and Brownstein were deposed. On November 5, 1973, Felton filed a motion seeking leave to amend his complaint in order to add several new allegations and the parent and the brother-sister companies of Marine Midland.[4] On November 9, 1973, Felton filed a motion seeking leave to add Edward J. Egan as a coplaintiff. After hearing argument on these motions, the district judge *sua sponte* dismissed the first amended complaint and the proposed second and third amended complaints for failure to comply with rules 9(b) and 8 of the Federal Rules of Civil Procedure.[5] Plaintiffs then filed their fourth amended complaint on November 29, 1973. Thereafter Main, Lafrentz moved to dismiss the complaint under rule 9(b) and alternatively for summary judgment under rule 56. Elias, Riesenbach, and Sher; Marine Midland and Brownstein; Stitching; and 3 I Co. also moved for dismissal of the complaint for failure to comply with rule 9(b). In an order dated March 29, 1974, the district court dismissed the complaint, without leave to amend, for failure to satisfy the requirements of rule 9(b). The district court, in reaching its decision, focused on plaintiffs' over-use of such words as "fraud", "conspiracy", and "worthless". It also noted that plaintiffs' complaint was based on information and belief, that no specific dates and amounts of stock purchases were alleged, and that no reliance was alleged.

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." We have recently interpreted this rule in *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442 (2 Cir. 1971), and *Segal v. Gordon*, 467 F.2d 602 (2 Cir. 1972). In *Shemtob* we held that "mere conclusory allegations to the effect that defendant's conduct was fraudulent or in violation of Rule 10b–5 are insufficient." *Shemtob v. Shearson, Hammill & Co., supra*, 448 F.2d at 444. In *Segal* we again stressed that conclusory statements are not enough.

The complaint at issue here first details the relationships between 3 I Co., a publicly held corporation whose stock is traded in the over-the-counter market, and the other defendants. Specifically it alleged that Walston is a stock brokerage firm that made a market for 3 I Co. stock, that Nissan was a vice-president of Walston and a 3 I Co. stockholder and creditor and a co-guarantor of several 3 I Co. bank loans, that Marine Midland and associated companies were 3 I Co. creditors and traded in 3 I Co. stock, and that Brownstein was employed as a securities analyst by Marine Midland and that in the course of his employment wrote reports on the prospects of 3 I Co.

Elias, Riesenbach and Sher were alleged to be officers, directors, and shareholders of Information Company of America and related companies when 3 I Co. purchased these companies on June 30, 1971. After the purchases the com-

---

Marvin S. Riesenbach, Marvin Schiller, Irving H. Sher, Stitching Excerpta Medica (Excerpta Medica Foundation), Medische Referantan (Excerpta Medica) N. V., Infonet (Excerpta Medica-Rescona) N. V., Eltrac (Infonet) N. V., Peter Warren, Main, Lafrentz and Co., Fred von Eugen, S. Kim Kessler, and Geraldine Kessler.

4. These companies were Marine Midland Banks, Inc., Marine Midland Bank-Western, Marine Midland Bank-Rochester, Marine Midland Bank-Central, Marine Midland Bank-

Southern, Marine Midland Bank of Southeastern New York, N. A., Marine Midland Bank-Northern, Marine Midland Bank-Eastern National Association, Marine Midland Bank-Chautaqua, National Association, Marine Midland-Tinker National Bank, Inc., Dreyfus-Marine Midland, Inc. This last named company is only a half brother of Marine Midland Bank-New York as only one-half of its stock is owned by Marine Midland Banks, Inc.

5. Rule 8 requires that a pleading consist of "a short and plain statement of the claim."

plaint alleges that these defendants became officers of 3 I Co.

With respect to Stitching the complaint alleges that it sold a data bank license to 3 I Co. for 3 I Co. stock. Main, Lafrentz is simply said to be engaged in the practice of accounting. The alleged misdeeds of these defendants were specified as follows:

## I. ELIAS, RIESENBACH & SHER

■ Elias, Riesenbach and Sher are alleged to have sold "worthless" companies to 3 I Co., and to have "falsely and deceptively declare[d] to the investing public that [3 I Co.'s purchase of these companies] was a major viable acquisition." Such statements clearly fail to allege "the circumstances constituting fraud . . . with particularity" as is required by rule 9(b). One of the main purposes of the rule is to apprise a "defendant of the claim against him and of the acts relied upon as constituting the fraud charged." 5 C. Wright & A. Miller, Federal Practice & Procedure § 1297, at 404 (1969). These allegations are merely conclusory and clearly do not apprise the defendants of the claims made against them. Simply denominating unspecified statements as "deceptive" and corporations as "worthless" is not enough. Some further explanation of the allegations is necessary to indicate how they constitute fraud. The district court correctly concluded that these allegations failed to satisfy rule 9(b). Segal v. Gordon, supra, 467 F.2d at 608.

## II. STITCHING EXCERPTA MEDICA

■ Stitching is alleged to have sold a "worthless" data bank license to 3 I Co. In addition, Stitching is alleged somehow to have conspired with 3 I Co. to inflate the value of the data bank license. Why the license was worthless and what was fraudulent about selling assets (even worthless assets) to another corporation are never explained. Allegations such as these scarcely inform a defendant what the plaintiff is talking about, let alone satisfy the standards required by rule

9(b). Hence as to Stitching, we affirm the ruling of the district court.

## III. MAIN, LAFRENTZ AND 3 I CO.

The complaint alleges that Main, Lafrentz failed to follow generally accepted accounting principles when it audited the books of 3 I Co. Specifically it alleged that Main, Lafrentz reviewed three specific agreements between 3 I Co. and other individuals or corporations and that it failed accurately to reflect the effect of those agreements on 3 I Co.'s financial statements with the result that 3 I Co.'s assets were substantially inflated. For example, the complaint claims that the value of the stock used to purchase a data bank license was inflated so as to increase the assets of 3 I Co. and that Main, Lafrentz failed to disclose this fact. Since 3 I Co. initially established the values assigned to the assets in question, it is alleged to be a party to the misrepresentation of its assets.

■ While the allegations here are not as specific as might be desired, they do specify the agreements and amounts involved in the alleged misrepresentation. They cannot be characterized as merely conclusory since they clearly are much more than a bald assertion that Main, Lafrentz engaged in fraudulent acts. It may well be that plaintiffs have no claim against Main, Lafrentz but the proper manner in which to determine whether a claim exists is to require an answer, and, if necessary, a trial of those issues. This result is especially appropriate since in applying rule 9(b) we must not lose sight of the fact that it must be reconciled with rule 8 which requires a short and concise statement of claims. See 5 C. Wright & A. Miller, Federal Practice & Procedure § 1298, at 406–410 (1969).

■ We realize that one purpose of rule 9(b) is to protect reputations of accountants and other professionals from scurrilous and baseless allegations of fraud. Segal v. Gordon, supra, 467 F.2d at 607. However, rule 9(b) does not insulate professionals from claims of fraud

where a complaint alleges the fraudulent acts with particularity, and this complaint does so. In any event, defendants may, in appropriate situations, be spared the expense and delay of a trial by moving for summary judgment.

█ As we find that the complaint with respect to Main, Lafrentz and 3 I Co. does sufficiently particularize the circumstances of the alleged fraud, the order of the district court dismissing the complaint as to Main, Lafrentz and 3 I Co. is reversed.

## IV. MARINE MIDLAND AND BROWNSTEIN

█ The complaint alleges, among other things, that Brownstein (and his employer, Marine Midland) circulated a report about 3 I Co. that projected significant increases in 3 I Co.'s future earnings and that Brownstein failed to correct that projection in subsequent reports on 3 I Co. even though the president of 3 I Co., Gerald Brodsky, expressly disavowed the earnings projections in a letter to Brownstein. The complaint also alleges, albeit in general terms, that plaintiffs purchased stock in reliance upon the various actions taken by defendants.[6] While it can hardly be said that the plaintiff's charges are a well-pleaded complaint, it is clearly sufficient

with respect to Marine Midland and Brownstein. The complaint alleges specific acts and omissions on the part of these defendants which, if true, might well be found, after a trial, to constitute fraudulent conduct on their part. The allegations are not merely conclusory and these defendants cannot argue that they have not been apprised of the acts that are alleged to constitute fraud. Thus we reverse the order of the district court dismissing plaintiffs' complaint with respect to Marine Midland and Brownstein.[7]

█ In light of the fact that plaintiffs are both lawyers and have had several opportunities to draft a satisfactory complaint against Stitching, Sher, Elias, and Riesenbach, we will not disturb that part of the district court's order that denies plaintiffs leave to amend their complaint against those defendants. Mooney v. Vitolo, 435 F.2d 838, 839 (2d Cir. 1970).

We find it unnecessary to consider plaintiffs' other arguments, e. g., whether a defendant waives a rule 9(b) objection to one amended complaint if he has answered a prior complaint in the same action.

The district court's order is affirmed with respect to defendants Stitching, Sher, Elias and Riesenbach, and reversed as to all other defendants.[8]

---

6. The district court appears to be in error when it asserts that no reliance was alleged. The district court also stressed the failure of plaintiffs to specify when and for what price they bought and sold 3 I Co. stock. Since purchases were alleged in general, we do not think that this omission merits the dismissal of plaintiff's complaint. Likewise, we do not find the fact that the complaint was pleaded on information and belief to be a reason for dismissing the complaint.

7. After argument of this case, another panel of this court expressed views in full accord with the position we have taken here, that, while

mere conclusory or general statements alleging fraud and deceit in violation of Rule 10b–5 fail to satisfy the particularity requirements of Fed.R.Civ.P. 9(b), a complaint is sufficient if it alleges that securities fraud was committed in connection with identified acts or omissions. Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374 (2d Cir., 1974).

8. Our decision should not be construed as approving plaintiff's motion for class action designation except to note our apprehension, for the reasons stated by Judge Bonsal in his opinion, regarding plaintiff Felton's qualifications to protect the interest of the class which he seeks to represent.