**Jacqueline TODD, Individually and as parent of Evan Winston Todd, an infant, and Christine Vivecka Jacobson, also known as Christine Todd, Plaintiffs,**

v.

**OPPENHEIMER & CO., INC. and Leo A. Fields, Defendants.**

**No. 77 Civ. 3058–CSH.**

United States District Court,
S. D. New York.

March 30, 1978.

---

Augustin J. San Filippo, Steven Jon Levine, P.C., New York City, for plaintiffs.

Guggenheimer & Untermyer, New York City, for defendants; David M. Brodsky, Norman L. Greene, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

The defendants Oppenheimer & Company, Inc. ("Oppenheimer") and Fields have moved: a) to dismiss certain portions of the complaint pursuant to Fed.R.Civ.P. 9(b) for failing to allege fraud with particularity; b) to stay any judicial determination of that portion of the complaint not based on federal securities laws, pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3; and c) to stay the above-mentioned arbitra-

tion pending this Court's resolution of the federal securities law claims. Plaintiffs opposed the first two motions. After having carefully reviewed the complaint and all the papers submitted by the parties, it is the decision of this Court that: a) Counts[1] 1, 4 through 9, 11 and 12 of the complaint, insofar as they purport to allege fraud, should be dismissed with leave to replead within thirty (30) days of the date of filing of this Memorandum Opinion and Order, and b) an evidentiary hearing is to be held to determine whether the plaintiff Jacqueline Todd signed the agreement to arbitrate. If such a hearing should result in a finding by the Court that the plaintiff signed the agreement, then 1) all proceedings pursuant to claims in this complaint, as it stands after the plaintiffs have had the opportunity to replead, which are not based on the federal securities laws will be stayed pending arbitration, but 2) said arbitration is not to commence prior to the resolution in this Court of the federal securities law claims herein.

### Factual Summary[2]

In May 1972 the plaintiff Jacqueline Todd ("Todd") received an inheritance from her late sister and was introduced to the defendant Fields. At this meeting in New York City Todd explained her desire for a "conservative investment program in order to obtain economic security and to provide regular income for the education and support of [her] children [the other plaintiffs]." Todd Affidavit at 2.

Apparently in response Mr. Fields outlined a plan whereby Oppenheimer and Fields would assume management of a fund which would produce regular income to the plaintiffs. Todd also insists that Fields promised a conservative investment pro-

---

1. The word "counts" in the text corresponds to the term "cause of action" in the plaintiffs' complaint.

2. The facts, as they are represented by the Court in this memorandum opinion, are not to be regarded as finally determined or binding on the parties in any manner at subsequent stages of this action, either in judicial or arbitration

proceedings. Such "facts" are recounted here merely to demonstrate the Court's present perspective and do not intimate any position on the merits of any party's assertions.

Of course, insofar as factual premises are essential elements of the decision and order rendered herein, they must be considered finally determined and binding on the parties.

gram restricted to "high quality securities" with a minimum of speculative risk.

Pursuant to this arrangement Todd turned over $259,000 in the form of a bank account together with an unspecified amount of stocks and bonds (with an unspecified value) to the defendants. This exchange created a "discretionary account" and apparently occurred in May 1972 or shortly thereafter. It was at this time and in June 1972 that the Customer's Agreement Forms of Oppenheimer were purportedly executed by the parties and upon which the signatures of a "Jacqueline Todd" are affixed.[3] It is paragraph 16 of these forms which contains the arbitration agreement the defendants rely on in their motion under 9 U.S.C. § 3 discussed *infra*.

In February 1973 the defendants advised Todd in writing that her account as of December 31, 1972 "showed a net sum of approximately $447,500." Todd Affidavit at 3. It would appear that in June 1974 or thereabouts Todd established another account of an unspecified amount with the defendant and plaintiffs contend the total investment amounted to approximately $500,000. It is unclear to this Court whether this amount represents the sum invested by plaintiffs or the maximum value said investments realized during the life of the accounts. However, although the details of the events which transpired during this period have not been presented to the Court, Todd became dissatisfied with the accounts by December 1974 and withdrew her funds, allegedly having sustained a loss of $230,000.

*The Complaint*

In June 1977 the plaintiffs filed a complaint of approximately 55 pages containing fourteen "causes of action" against both defendants alleging violations of both federal securities laws and common law. They are sketched briefly here, those characteristics which are material to these motions being examined in more detail in the "Discussion" section of this memorandum opinion.

The first claim asserts fraud on the part of both defendants essentially by virtue of their representations of expertise in investment-fund management and guarantees of particular practices or returns while they never intended such performance.

The second and third claims sound essentially in negligence; the plaintiffs alleging defendants mismanaged the accounts. The fourth claim contains allegations of many forms of misconduct on the part of the defendants and includes, *inter alia*, fraud and "churning". The fifth claim alleges that the concealment of the churning constitutes fraud.

The sixth claim alleges breach of fiduciary duties insofar as the defendants committed the fraud which the plaintiffs describe in the earlier claims. The sixth claim also alleges mismanagement, conflict of interest, negligence and other improvident investment practices.

The seventh claim alleges a violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. The basis for this contention rests primarily on the factual allegations included with the first six claims.

The eighth claim asserts violations of Sections 9 and 15(c)(1) of the Exchange Act, 15 U.S.C. §§ 78i and 78o(c)(1), and Rule 15cl–2 as promulgated under Section 15, 17 C.F.R. § 240.15cl–2. The factual premises alleged herein are the fraud as described in the other claims. The ninth claim alleges liability under Sections 12 and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77l and 77q(a), based on the "activities, misstatements and omissions" described above.

The tenth claim avers violations of Sections 1, 2, 18 and 27 of the National Association of Securities Dealers ("NASD") Rules of Fair Practice and also violations of Rules 401, 405, 408 and 435 of the New York Stock Exchange (the "Exchange rules") due

---

**3.** A copy of each of these forms is attached to the papers submitted by the defendants in this motion. The dates of execution are May 31, 1972 and June 26, 1972.

to the defendants' breaches of both the agreement with Todd and their fiduciary duties. The eleventh and twelfth claims allege violations of the above-mentioned NASD sections and the Exchange rules respectively, due to fraud as articulated in earlier claims.

The thirteenth claim alleges a breach of contract and is on behalf of Todd's children (also plaintiffs herein) apparently as third-party beneficiaries. The fourteenth claim is for the emotional and mental suffering incurred by Todd due to defendants' actions.

## DISCUSSION

It should be noted preliminarily that this Court has jurisdiction in this action under Section 22 of the Securities Act of 1933, 15 U.S.C. § 77v; Section 27 of the Exchange Act, 15 U.S.C. § 78aa; and pendent jurisdiction.

### *Motion to Dismiss under Rule 9(b)*

■ Federal Rule of Civil Procedure 9(b) reads as follows:

"Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

It is clear, and the plaintiffs do not contest the position, that this rule applies to the allegations of fraud contained in the complaint involved in this case. *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972); *Shemtob v. Shearson Hammill & Co., Inc.*, 448 F.2d 442 (2d Cir. 1971); *Elster v. Alexander*, 75 F.R.D. 458 (N.D.Ga.1977).[4] Consequently a review of the directives which the courts have interpreted as emanating from this rule is appropriate before examining the particulars of the pleadings of fraud in the instant complaint.

I.

It should be understood at the outset that the Rule 9(b) requirements must be reconciled with Fed.R.Civ.P. 8 which requires, *inter alia*, a "short and plain statement of the claim showing that the pleader is entitled to relief", *Felton v. Walston and Co., Inc.*, 508 F.2d 577, 581 (2d Cir. 1974); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). Nevertheless, courts are required to examine the complaints with reference to the purposes behind Rule 9(b).

■ Thus the application of the rule contributes to: minimizing the number of strike suits; protecting defendants from the harm that results from charges of serious wrongdoing, *Segan v. Dreyfus Corp.*, 513 F.2d 695, 696 (2d Cir. 1975); *Segal, supra*, 467 F.2d at 607; and inhibiting the filing of a complaint as a pretext for discovering unknown wrongs, *Gross v. Diversified Mortgage Investors*, (*Gross I*), 431 F.Supp. 1080, 1087 (S.D.N.Y.1977); see *Segal, supra*, 467 F.2d at 607–08. Additionally, in what would appear to constitute as salient a consideration as any, Rule 9(b) assures that the defendants are given notice of the exact nature of the fraud claimed, sufficient to permit responsive measures. See *Felton, supra*, 508 F.2d at 581; *Gross I, supra*, 431 F.Supp. at 1087. This is a more stringent rule than merely to require specificity sufficient to "inform a defendant [as to] what the plaintiff is talking about." *Felton, supra*, 508 F.2d at 581.

Accordingly the courts have been unanimous in their prohibition of "mere conclusory allegations." *Segal, supra*, 467 F.2d at 607, "no matter how frequently repeated." "[T]here must be allegation of facts . . amounting to deception in one form or an-

---

4. The Court acknowledges that Rule 9(b) would not apply to claims asserted under Section 12 of the Securities Act of 1933, 15 U.S.C. § 77*l* if no fraud is alleged therein. *Billet v. Storage Technology Corp.*, 72 F.R.D. 583, 585 (S.D.N.Y. 1976). However, the reference to Section 12 in

count nine of plaintiffs' complaint sounds essentially in fraud, and consequently Rule 9(b) applies thereto. See *Schoenfeld v. Giant Stores Corp.*, 62 F.R.D. 348, 351 (S.D.N.Y. 1974).

other." *Id.* All of the elements of fraud, and the circumstances constituting the same, should be in a well-pleaded complaint. *Elster, supra,* 75 F.R.D. at 461. Judge Moye in the *Elster* opinion made the following helpful observations regarding the requirements of Rule 9(b):

"[A well-pleaded claim of fraud] normally includes the time, place, and content of the false misrepresentations, the facts misrepresented, and the nature of the detrimental reliance . . . .

"A complaint alleging violations under [Rule] 10b–5 will not pass scrutiny if it does not allege with some factual specificity the financial statements and documents constituting the fraud.

. . . . . .

"At the very minimum, Rule 9(b) requires that fraud be pleaded with sufficient particularity such that [the] adverse party is able to frame concrete responses. . .

. . . . . .

"There must be . . . specific identification of the financial documents; identification of the false statements made and in which portions of the financial documents they appear; in what respects the statements were false, misleading or inaccurate or what omissions were made or why the documents are believed to be misleading; when the documents were issued and which defendants were responsible for their issuance." 75 F.R.D. at 461.

In essence, the plaintiffs must not only identify the particular fraudulent statements (or omissions) but also "specify in what respects each of the statements were false and misleading, and the factual basis for believing [the defendant] acted fraudulently and was responsible." *Gross v. Diversified Mortgage Investors (Gross II)*, 438 F.Supp. 190, 195 (S.D.N.Y.1977) (repleaded complaint still violative of Rule 9[b]).

A further aspect of the sufficiency of the pleadings challenged herein is the adequacy of such allegations "on information and belief." The rule in this Circuit is that such averments satisfy 9(b) if they are accompanied by a statement of facts upon which the belief is founded. *Schlick, supra,* 507 F.2d at 379; *Segal, supra,* 467 F.2d at 608. This latter requirement allows the defendants to frame a concrete response based on the facts so relied upon by the plaintiff. *Elster, supra,* 75 F.R.D. at 461. This is a relaxation in the general rule that "Rule 9(b) pleadings cannot be based on 'information and belief,'" said exception having been created for instances where the matters are "peculiarly within the adverse parties' knowledge." *Segal, supra,* 467 F.2d at 608. *Gross I, supra,* 431 F.Supp. at 1087. It is unclear here whether such facts are peculiarly within the defendants' knowledge, primarily because the transactions in issue are not defined.

However, it must be recognized that, assuming *arguendo* the particular facts are peculiarly within the defendant's knowledge, the statement of facts upon which plaintiff relies must portray the requisite particularity Rule 9(b) demands. On this question Judge Gagliardi has recently noted:

"[u]nder Rule 9(b), the court must examine the complaint to determine whether it sets forth with particularity 'a statement of facts upon which the belief is founded.' . . . [T]here must be a specific identification of what statements were made in what reports and in what respects they were false, misleading or inaccurate or what omissions were made and why the statements made are believed to be misleading. Plaintiff must state the time, place and content of each financial statement and report which she claims misled her, the manner in which they were alleged to be fraudulent, and what was obtained as a consequence of the fraud. Additionally, the plaintiff has failed to plead the nature and amount of securities purchased and the specific dates of the transactions as required by Rule 9(b)." *Gross I, supra,* 431 F.Supp. at 1087–88 (citations and footnote omitted).

In summary, whether the averments are upon "information and belief" or upon actual knowledge, the plaintiffs must specify: 1) precisely what statements were made

in what documents or oral representations or what omissions were made, and 2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, 3) the content of such statements and the manner in which they misled the plaintiff, and 4) what the defendants "obtained as a consequence of the fraud." See *Gross I, supra*, 431 F.Supp. at 1087–88; see also *Gross II, supra*, 438 F.Supp. at 193–94; *Elster, supra*, 75 F.R.D. at 461.

## II.

With the standards from Rule 9(b) having been sketched in the discussion above, we turn to the individual claims of fraud in the complaint.

5. Paragraph 19 of the Complaint reads:
"Prior to the establishing of the accounts as aforedescribed by the plaintiff with the defendant Broker, the defendants made, among other things, the following statements and/or representations to the said plaintiff:
"(a) That defendant Broker had a great deal of experience in the stock market and that it was one of the largest brokerage concerns in the United States;
"(b) That defendant Broker had the greatest expertise in recommending and handling investments, and a large research department, and made representations to that effect in many of its brochures and advertising matter;
"(c) That defendant Broker would have its most competent experts managing the plaintiff's accounts, and advising, counselling and recommending investment transactions;
"(d) That defendant Broker would have its most competent and expert advisers at the plaintiff's disposal at all times;
"(e) That defendant Broker would furnish the plaintiff Jacqueline Todd with fair and accurate reports and information about her investments and her accounts, upon all of which she could place full and safe reliance;
"(f) That in the event the plaintiff Jacqueline Todd opened and maintained an account with the defendant Broker, she would be given expert supervision and advice by employees of defendant Broker, including without limitation, defendant Fields;
"(g) That with the sum of $259,000. received from plaintiff the defendant Broker would purchase securities whose income through dividends and income would earn approximately $32,000. to $33,000. per year.
"(h) That the investment portfolio purchased by defendant with plaintiff's aforesaid funds would provide her with 'automatic disburse-

The first claim of fraud is contained in the first "cause of action", a common-law claim for fraud. In support thereof the plaintiffs list a series of representations reproduced in the margin [5] allegedly made to Todd at some unspecified time and place "prior to the establishing of the accounts." The statements include, *inter alia*, representations as to the expertise which would be employed in managing Todd's accounts and a minimum return she could expect. The list of promises is devoid of any mention of a) who made the statements other than "the defendants", and b) any description as to how these representations were made. Thus the defendants have not been apprised of the where, when, who or how of any of these "fraudulent statements." Rather, the plaintiffs state upon "information and be-

ments' of not less than $1,500. per month paid from income and dividends which would not vary very much so that plaintiff could plan her expenditures accordingly.
"(i) That the earning of the aforesaid dividends and income was a sound, practical and attainable plan and would be available to plaintiff just as quickly as she could make her funds and securities available to defendants.
"(i–1) That defendant Fields was a licensed registered representative under Federal, Nevada and New York State laws;
"(j) That the model investment portfolio recommended by defendant for the proceeds of her said funds would consist of sound, conservative, income producing investments yielding up to 10 per cent which would also preserve plaintiff's capital;
"(k) That the plaintiff would have the benefit and use of all of the defendant Broker's research facilities and staff;
"(*l*) That the defendant Broker's research facilities and reports were based upon first hand information from expert individuals, whom the defendant Broker employed;
"(m) That the defendant Broker, through its representatives, including co-defendant Fields, would maintain strict surveillance and supervision over the plaintiff's investments and that plaintiff Jacqueline Todd would be constantly and continuously kept advised of all developments affecting said investments as they occurred;
"(n) That the plaintiffs would otherwise receive the benefit of the full extent of all of the services of the defendant Broker and advice of all of their experts; . . . ."

lief" that such promises were "false and fraudulent, since in truth and fact the defendant [Oppenheimer]:

"a. Never intended and in fact did not have its most competent experts managing plaintiff's accounts, or advising, counselling and recommending investment transactions, but instead had her accounts in the hands of defendant Fields who, though advised by plaintiff of the nature of the investments required by plaintiff and of her needs for preservation of capital and regular income, instead engaged in, among other things:

"(i) The use of margin which was utilized without disclosure of its implication to plaintiff by defendants;

"(ii) Short term in and out trading;

"(iii) Selection of securities with little or no dividends and/or safety for preservation of income and capital;

"(iv) Selection of stocks with below investment grade rating;

"(v) Selection of bonds with less than an investment grade rating;

"(vi) Trading in warrants;

"(vii) Holding of warrants and the corresponding common stock;

"(viii) Trading in securities wherein defendant Broker was a principal in and/or an underwriter;

"(ix) The application of capital and/or income to losses sustained on unauthorized margin transactions;

"(x) Disbursing capital and borrowed funds to plaintiff rather than income; and

"(xi) Speculative trading; . . . ." Complaint ¶ 20.

Other allegations regarding the incompetence of the defendant Fields and Oppenheimer's other managers who might have handled the plaintiffs' account are also included as proof of fraud.[6] These further averments at most merely accuse the defendants generally of not fully performing the promises listed in footnote five without giving any specific instance of any particular breach of said promises. An example of such general factual allegations is the following accusation "upon information and belief" that Oppenheimer:

"j. Instituted and maintained in the plaintiff's accounts unusually, grossly and imprudently over-extended positions in the various securities maintained in plaintiff's accounts; instituted and maintained

---

6. These further allegations in Paragraph 20 of the Complaint include, *inter alia*, the following:

"b. In addition, the co-defendant Fields was not equipped or experienced to manage plaintiff's accounts in a skilled and professionally competent manner or was experienced and intentionally failed and neglected to exercise due and proper diligence, supervision and care with respect to the handling of plaintiff's accounts under the circumstances in a skillful and professionally competent manner and/or he was overburdened with other duties and activities and many other accounts, and/or he did not transmit to plaintiff instant news or any information which would affect the position of the plaintiff's investments and defendant Fields was not a licensed registered representative under Federal, New York and/or Nevada laws, all of which violated a fundamental basic concept of securities investment for a person in the circumstances as plaintiff Jacqueline Todd.

"c. Did not have its experts at the plaintiff's disposal, nor did they ever make available to the plaintiff appropriate information or give her any proper or competent counsel or advice.

"d. Failed to furnish on regular basis statements and/or reports, advice or recommendation ("reports") to the plaintiff relating to the subject matter in which the plaintiff was to invest in securities and/or provided reports, if any, which were inaccurate, misleading in many respects, were not based upon true and factual data and by reliance upon which the plaintiff, to her detriment, did not make any monies with or from, except to generate commissions which were solely for the benefit of the defendant Broker and the co-defendant Fields and which reports, if any, were conflicting, inaccurate and contained duplicity of information giving advice totally contrary to the position which was, upon information and belief, enjoyed by defendant Broker in the same securities for its own account;

"e. Never had any intention of, and in fact, after plaintiff established her accounts, actually did not have any investment specialist familiar with plaintiff's needs or requirements or obligations to supervise plaintiff's accounts or to give her expert advice with respect to her investment or securities; . . . ."

inappropriate investments including, without limitation, investments in warrants; utilized margin contrary to the financial needs and best interests and investment objectives of plaintiff, as aforesaid; instituted and maintained excessive trading on plaintiff's accounts; traded in securities which were not consistent with plaintiff's investment objectives and financial requirements; maintained and retained investments which were inconsistent with plaintiff's investment objectives and financial needs.

"k. Did not disclose to plaintiff when said representations were made that thousands of its customers investing or dealing in securities lost money; . . . ."
Complaint ¶ 20(j) and (k).

It is apparent from reading the passages reproduced above and in the margin that the first claim of fraud is based on allegations which can only be described as conclusory. They identify only vague promises and general categories of investment mismanagement. There is no inclusion of who specifically made the representations, when, where, in what form or the *facts* misrepresented, *Elster, supra,* 75 F.R.D. at 461; *Gross I, supra,* 431 F.Supp. at 1088. Once these items are pleaded then the plaintiff must plead the fraudulent nature of these statements and the detrimental reliance thereon. *Gross I, supra,* 431 F.Supp. at 1088; see *Segal, supra,* 467 F.2d at 607–08.

Moreover, beyond the reference to an initial investment of a bank account of $259,-000, there has been absolutely no mention of the particular transactions engaged in by *any* party. Thus the defendant and this Court have no basis for any understanding regarding either damages or the various practices which the plaintiffs allege defendants employed in handling her accounts as listed above. This void clearly contravenes

the mandate of Rule 9(b). *Segal, supra,* 467 F.2d at 608 ("the nature and amount of the securities exchanged, . . . the dates of the transaction [must be] disclosed"). The plaintiff must plead "the nature and amount of the securities purchased and the specific dates of the transactions." *Gross I, supra,* 431 F.Supp. at 1088.

█ The above observations make it clear that the plaintiffs' complaint violates Rule 9(b). "[M]ere conclusory allegations to the effect that defendant's conduct was fraudulent or in violation of Rule 10b–5 are insufficient." *Shemtob, supra,* 448 F.2d at 444. A similar conclusion led Judge Lumbard to note, "[a]llegations such as these scarcely inform a defendant what the plaintiff is talking about, let alone satisfy the standards required by rule 9(b)." *Felton, supra,* 508 F.2d at 581. Consequently, Count 1, which purports to plead a claim for fraud, is hereby ordered dismissed with leave to plaintiffs to replead said claim within thirty (30) days of the date of the filing of this Memorandum Opinion and Order.

### III.

█ Plaintiffs' fourth claim reasserts the list of promises reproduced in note 5 of this memorandum opinion and alleges these promises when combined with the allegation of "churning"[7] constitute fraud. The plaintiffs do not provide any statement of facts which might support this "churning" allegation, however, beyond the mere conclusory allegation that churning occurred. As was established above, the nature, amount and dates of securities transactions must be included in the complaint. *Segal, supra,* 467 F.2d at 608; *Gross I, supra,* 431 F.Supp. at 1088.[8]

---

**7.** For a recent discussion of a "churning" claim, see *Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38 (2d Cir. 1978).

**8.** In opposition to the motions by defendants, the plaintiffs submitted an affidavit signed by Jacqueline Todd, at least a portion of which is clearly directed at curing the vague allegations of the complaint.

It must first be acknowledged that the propriety of weighing the statements in that affidavit in determining this particular motion on the sufficiency of the pleadings is subject to serious doubt. Ordinarily if this motion were pursuant to Fed.R.Civ.P. 12(b)(6) and affidavits were submitted (or the opportunity therefor provided) by *both* sides, the motion could be treated as one for summary judgment. Fed.R.

Thus, because the averments and factual references display the same inadequacies Count 1 suffered, it is the conclusion of this Court that this claim, only to the extent it alleges fraud, should be and hereby is dismissed with leave to the plaintiffs to replead within thirty (30) days of the filing of this Memorandum Opinion and Order.

Counts 5, 6, 7, 8, 9, 11 and 12, insofar as they all allege fraud at least in part, suffer the same infirmities described above under the discussion of Counts 1 and 4 because they rely solely on the same averments of fraud and consequently warrant the same dismissal as contravening the requirements of Rule 9(b). Accordingly the defendants' motion under Rule 9(b) is granted and Counts 1, 4 through 9, 11 and 12 of the complaint are dismissed with leave to the plaintiffs to replead all such counts within thirty (30) days of the date of the filing of this Memorandum Opinion and Order.

■ The defendants also moved to dismiss Count 10 in part as violative of Rule 9(b). However, we read said claim to only allege breaches of certain NASD rules and New York Stock Exchange rules. The factual premises for the claim incorporate all the prior claims but it is not clear to what extent the claim depends upon proof of fraud. Thus although it is still uncertain in this Circuit whether such rule violations give rise to a civil cause of action to cus-

tomers such as the plaintiff, see e. g. *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, (2d Cir. 1978) (At 41, 43 n. 6 and Judge Mansfield's dissent at 55–56), these averments as they stand are not invalid under Rule 9(b) and must remain in the action. However, this is without prejudice to the defendants renewing this 9(b) motion with regard to Count 10 should it later appear that all or part of such claim requires proof of fraud and plaintiffs fail to replead the circumstances supporting the fraud claims with sufficient particularity.

### Motion to Compel Arbitration

The defendants' second motion seeks to compel arbitration of Counts 1 through 3, 5, 6, 13, 14, and 10 (in part) pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3. The following discussion will treat Counts 1, 5 and 6, dismissed herein, as though they have been repleaded consistent with Fed.R.Civ.P. 9(b). The other counts of the complaint are not included in this demand because they involve federal securities law claims which the defendants view as precluded from compulsory arbitration by *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

Section 3 of the Federal Arbitration Act reads:

"Stay of proceedings where issue therein referable to arbitration

Civ.P. 12(b). Indeed the *Segal* case is an example of such treatment, see 467 F.2d at 606. However, this option is clearly precluded in this case where the defendants have not submitted affidavits nor been asked to.

Secondly, in the interests of the plaintiffs' guidance should they choose to replead the claims dismissed herein, the statements in the Todd Affidavit would not cure the vagueness prohibited by Rule 9(b). Illustrative of this conclusion is the statement in paragraph 7 of the affidavit that "Defendants advised me orally in May 1972 and in writing that I could trust and rely upon Mr. Fields . . . " As the cases cited in the text show, the plaintiffs must plead precisely *who* made what statements, if in writing then *what documents*, etc.

Plaintiff Todd continues in her affidavit to state "that stocks and bonds with below investment grade rating [were] selected . . . " ¶ 7. If this is the case, then Rule 9(b) requires the plaintiffs to identify which such stocks were

selected, what was their grade, when were they selected, in what amounts, etc. If this information is unknown to the plaintiffs, then a statement of facts which form the basis for plaintiffs' belief is required, as shown in the text. This may require investigation and research but such is the nature of Rule 9(b), see *Segal, supra*, 467 F.2d at 608 & n. 8.

The hearsay statements in this affidavit regarding "representative examples [of defendants' mismanagement] provided to me by a securities expert", ¶ 8, are also insufficient to support the broad accusations contained in the complaint. They are only isolated instances which, if not complimented by other transactions or averments, will not support an allegation of fraud. For example, an allegation that the defendants purchased a particular security does not alone support an accusation of selecting "bonds with less than an investment grade rating." Todd Affidavit ¶ 8(d).

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

The "agreement" defendants rely upon in this request consists of an arbitration clause contained in two Oppenheimer & Co. Customer Agreements which were allegedly executed in May 1972 and June 1972 for the two accounts Todd placed with Oppenheimer. The arbitration clauses in each Agreement are identical and read as follows:

"16. Any controversy between you and the undersigned arising out of, or relating to this agreement, or the breach thereof, or arising out of transactions with you shall be settled by arbitration, in accordance with the Rules, then obtaining, of either the American Arbitration Association, or the Board of Arbitrators or the Panels of the New York Stock Exchange, as I may elect. If I do not make such election by registered mail addressed to you at your main office within five days after receipt of notification from you requesting such election, then you may make such election. Any arbitration hereunder shall be before at lease [sic] three arbitrators, and the award of the arbitrators or a majority of them shall be final, and judgment upon the award rendered may be entered in any court having jurisdiction. I agree that notice of, and, in any such arbitration may be sent to me by mail, and waive personal service thereof."

■ The plaintiffs do not contest the arbitrability of their various non-federal claims under the terms of this clause, but resist this motion on two grounds. They first argue that Todd never signed the two agreements, based on the representation of Mrs. Todd that she has no recollection of signing such agreements and does not recognize her alleged signature thereon. Although this is not a direct statement that such signature is not hers, the defendants concede it is sufficient to create a question of fact as to the signature's authenticity whose resolution will require a hearing (Reply Memorandum at 11). The Court agrees. Accordingly, if it is still the plaintiffs' position that Todd cannot remember or recognize her signatures on both agreements and they still oppose the arbitration, the parties are hereby directed to notify this Court by mail within ten days of the date of this Memorandum Opinion and Order as to their respective availabilities for such a hearing.

The plaintiffs' second ground for opposing the arbitration is that, assuming *arguendo* the signatures are genuine, Todd was coerced into signing the agreements due to her inexperience and her belief that there was no alternative form of investment other than the discretionary accounts with defendants. Todd Affidavit ¶ 12. These protestations are without merit.

■ The Second Circuit in *Hamilton Life Ins. Co. v. Republic National Life Ins. Co.*, 408 F.2d 606 (2d Cir. 1969) per Judge Smith opined:

"The Arbitration Act contemplates a distinction between the entire contract between the parties and the arbitration clause. While it is true that fraud or illegality in the inducement of the arbitration clause *itself* is a defense to enforcement of arbitration, the illegality, fraudulent inducement, or repudiation of the principal contract does *not* operate to nullify an agreement to arbitrate." 408 F.2d at 610 (emphasis in original).

A similar distinction had earlier been evinced by the Supreme Court in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) where the Second Circuit's orientation was approved in the following passage:

"The view of the Court of Appeals for the Second Circuit, as expressed in this

case and in others, is that—*except where the parties otherwise intend*—arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and that where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." 388 U.S. at 402, 87 S.Ct. at 1805 (emphasis in original, footnotes omitted).

Thus plaintiffs' allegation of fraud or coercion in entering into the agreements is simply not a defense to a motion under 9 U.S.C. § 3. The purported belief that no alternative to discretionary accounts exists is equally unpersuasive insofar as such a belief has no visible relation to the validity of the agreement to arbitrate.

▮ Consequently recognizing 1) that different claims in the same action can be split pursuant to this section's invocation, see *Fuller v. Guthrie*, 565 F.2d 259 (2d Cir. 1977); 2) this division has been employed in actions involving securities transactions combining non-arbitrable federal claims and arbitrable common law claims, see e. g. *Stockwell v. Reynolds & Co.*, 252 F.Supp. 215 (S.D.N.Y.1965), and 3) the plaintiffs have made no showing that the federal and state claims are so intertwined as to preclude separation, see *Sibley v. Tandy Corp.*, 543 F.2d 540, 543 (5th Cir. 1976), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977), contrast *Shapiro v. Jaslow*, 320 F.Supp. 598 (S.D.N.Y.1970), the defendants' motion to stay judicial proceedings pending arbitration of Counts 1, 2, 3, 5, 6, 13 and 14 is granted. However, said arbitration is stayed pursuant to the determination of defendants' third motion *infra*.

The Court recognizes, however, that the claims which must be determined under the standards of federal securities laws involve factual bases which are essential elements in some of the common law claims. In such circumstances arbitration of such factual issues is inappropriate. *Allegaert v. Perot*, 548 F.2d 432, 437 (2d Cir.), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977); *Frier Industries, Inc. v. Glickman*, 1974–1975 CCH Fed.Sec.L.Rep. ¶ 94,845 (S.D.N.Y.1974); see *Greater Continental Corp. v. Schechter*, 422 F.2d 1100, 1103 (2d Cir. 1970). Consequently the decision of the Court that certain claims are stayed because they are arbitrable must be viewed in conjunction with the decision on the third motion *infra*, that no arbitration is to commence until this Court has finally determined all the federal securities law claims as they exist after plaintiffs' opportunity to replead.

The motion to compel arbitration with regard to Count 10 is also granted. Assuming *arguendo* that violations of the NASD and Exchange rules give rise to private causes of action, see *Rolf, supra*, such causes do not arise directly out of the federal securities laws, and thus fall outside the rule of *Wilko v. Swan*. The same is true to the extent that Count 10 alleges breach of contract and breach of fiduciary duty, independent of the rules. Counts 1, 5 and 6, although currently dismissed, are subject to this stay should they be properly repleaded.

### Motion to Stay Arbitration

The defendants have also moved to stay such arbitration as is discussed herein pending this Court's resolution of the claims remaining before it. As Judge Bonsal stated under similar circumstances in the *Stockwell* case:

"It would therefore appear that the relief sought in Counts II and III of each complaint is subject to arbitration as a controversy arising out of the plaintiffs' respective Customer's Agreements with defendant Reynolds & Co. It is noted that the relief sought in each of these counts is based on the same transactions which are the subject of the Securities Exchange Act counts, which must be determined by the court under the *Wilko* doctrine. There would appear to be little purpose in having both the court proceeding and the arbitration going on at the same time, and doubtless the ultimate determination by the court of Counts I and IV would have a definite bearing on

the outcome of the arbitration proceedings. Accordingly, the court is not prepared to direct arbitration of Counts II and III at the present time. The order to be entered herein should provide that these counts are subject to arbitration, and that arbitration will be stayed pending final determination with respect to Counts I and IV of each complaint." 252 F.Supp. at 220.

There would appear to be little question that this Court has the power to order any arbitration of the claims in this action be stayed pending the judicial resolution of the federal securities law claims. *Greater Continental, supra,* 422 F.2d at 1103; *Frier Industries, supra*; see *Allegaert, supra,* 548 F.2d at 438. Moreover, the propriety of such a stay under the circumstances is also beyond peradventure, which is combined in this case with the fact that plaintiffs have not opposed such a stay.

Accordingly, the defendants' third motion is granted and it is the Order of this Court that the issues referable to arbitration, Counts 1, 2, 3, 5, 6, 10, 13 & 14 are not to be submitted to arbitration until this Court has resolved the other counts remaining in this action.

It is So Ordered.