Henry LUCE III, Martin E. Messinger, Arthur Goldberg, Simon Akst, Marvin Bostin, Marshall Butler, Paul Caccia, John J. Colgan, Jr., Leslie Cooper, Joseph Cusenza, Thomas Despagni, James Foley, Ariel Halpern, David Hunter, David Kaplan, Lawrence Linehan, Michael O'Daly, David Pleger, Robert Shapiro and Herbert Weller, individually and on behalf of the limited partners of 583–587 Broadway Associates, and derivatively on behalf of 583–587 Broadway Associates, Plaintiffs,

v.

Jonathan H. EDELSTEIN, Carol Kohlreiter Levy, George Kazantzis, Leonard V. Gray, A. Michael Victory, HQZ Enterprises, Inc., HQZ Fine Arts, Inc., individually and as general partners of 583–587 Broadway Associates, Cumberland Investment Group, HQZ Development Corporation, HQZ Arts, Inc., Petcap Development Corporation, Petra Capital Corporation and 583–587 Broadway Associates, a New York Limited Partnership, Defendants.

No. 85 Civ. 4064 (RLC).

United States District Court, S.D. New York.

Jan. 2, 1986.

Jonathan S. Gaynin, New York City, for plaintiffs; Melinda Socol, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants; Jay G. Strum, Jane W. Parver, William H. Freilich, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

This litigation arises from the collapse of a real estate investment venture in the Soho section of Manhattan. The twenty named plaintiffs, limited partners in 583–587 Broadway Associates ("Broadway Associates"), brought this action against, *inter alia*, Broadway Associates and its general partners HQZ Enterprises, Inc., ("HQZ") and HQZ Fine Arts, Inc. ("HQZ Fine Arts"). The complaint also names: the Cumberland Investment Group ("Cumberland") and Petcap Development Corp. ("Petcap"), joint owners of HQZ Arts Inc. ("HQZ Arts"); Petra Capital Corporation ("Petra"), owner of Petcap; HQZ Development Corporation ("HQZ Development"); and five individuals, the officers and directors of the various HQZ entities. HQZ Fine Arts and HQZ are alleged to be the alter egos of Cumberland, HQZ Arts, HQZ Development, Petcap and Petra.

On August 7, 1985, the court accepted jurisdiction over this action solely in order to determine plaintiffs' allegations of violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and Rule 10b–5 of the Securities Exchange Commission, 17 C.F.R. § 240.10b–5. The other claims, brought under both state and federal law, were dismissed in view of a forum selection clause in Broadway Associates' Partnership Agreement that chose the New York State Supreme Court for all claims arising out of the agreement. The case is now before the court on motions by the defendants [1] to dismiss the complaint pursuant to Rules 9(b) and 12(b)(6), F.R.Civ.P.[2]

FACTS

Although the complaint details exhaustively the failure of this real estate venture, it provides only the barest outline of its initiation. In late 1981, HQZ Arts bought the buildings located at 583–587 Broadway and 154 Mercer Street. By late November of that year, an Offering Memorandum ("the Memorandum"), dated December 17, 1981, was circulated to solicit limited partners for investment in a venture that would convert these buildings

---

**1.** There are two motions to dismiss: one by Petra and one in which HQZ, HQZ Fine Arts, Cumberland, HQZ Development, HQZ Arts and individual defendants Edelstein, Kazantzis, Gray and Victory join.

**2.** Defendant Petra also moved for a stay of discovery pending the determination of this motion.

into condominium units for artists and art and design-related businesses. Portions of the building were to be donated to the New Museum of Contemporary Art. The memorandum detailed the plans for financing the project: the general partners would contribute $385,000 in cash; limited partners would contribute $3,715,000 in cash and letters of credit. These funds were to pay the costs of acquiring the buildings. Construction costs for conversion into condominiums were to be paid from the proceeds of a $4.5 million bank loan to be guaranteed by the general partners. Completion of construction was scheduled for late 1982. One key to the profitability of the project was the granting of a variance to permit residential use of the buildings. Plaintiffs allege that at the time the memorandum was circulated, defendants were aware that such a variance had been denied.

On December 30, 1981, HQZ Arts transferred the buildings to Broadway Associates. At that time only sixteen limited partnership interests [3] had been purchased, for a total contribution of $1,950,000. The general partners contributed only $80,000 cash. The plans to finance construction were altered in ways not relevant here. Construction costs mounted without appreciable results; as of November 30, 1984, construction expenses were $2 million more than anticipated. An additional $4 million in costs was projected. To date, the construction work is incomplete. Plaintiffs now charge that in the course of soliciting their participation in this ill-fated project, the defendants made material misrepresentations and omissions in violation of § 10(b) of the Exchange Act and SEC Rule 10b–5.

## DISCUSSION

■ Asserted violations of § 10(b) and SEC Rule 10b–5 are fraud claims, and hence subject to the specific pleading requirements of Rule 9(b), F.R.Civ.P. *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982). That rule requires that "the circumstances constituting fraud ... be stated with particularity" and thus

carves out an exception to the liberal scope allowed pleadings by Rule 8, F.R.Civ.P. In general, Rule 9(b), F.R.Civ.P. has two purposes: to provide defendants with fair notice of the allegations against them; and to protect them from unsubstantiated harm to their reputations. *Ross v. A.H. Robins*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Moreover, in securities fraud litigation, there is a third reason for requiring specificity in the pleadings: denying plaintiffs the *in terrorem* value of a groundless strike suit. *Id.* These second two concerns are inevitably linked with the perceived merits of the § 10(b) claim. Our scrutiny of the complaint is focused by considering "whether the conduct alleged can be fairly viewed as 'manipulative or deceptive.'" *Crystal v. Foy*, 562 F.Supp. 422, 424 (S.D.N.Y.1983) (Weinfeld, J.), *citing Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977). Although these concerns are not reducible to an easy formula, a well-pleaded complaint under Rule 9(b), F.R.Civ.P. should state: (1) the time, place and manner of any statement alleged to be a misrepresentation; (2) the person or persons responsible for making the statement; and (3) the way in which the statement was misleading. *See Todd v. Oppenheimer*, 78 F.R.D. 415 (S.D.N.Y.1978) (Haight, J.).

■ The instant complaint does not display these hallmarks of specificity. As a prefatory matter, the court notes that most of the activities alleged are not even colorably within the purview of § 10(b) and SEC Rule 10b–5, but fall within the realm of poor prediction or mismanagement. The court bases its decision to dismiss on Rule 9(b), F.R.Civ.P. rather than 12(b)(6), F.R.Civ.P. because in the current state of the pleadings we can only speculate as to whether plaintiff states a claim for which relief may be granted.

The gravest shortcoming of the complaint is its failure to allege specific state-

---

**3.** This figure excludes interests purchased by the   defendants.

ments by named defendants. For example, at ¶ 37 the complaint alleges that:

[i]n connection with the solicitation and sale [of limited partnership interests], the Individual Defendants represented to plaintiffs and the class that they personally, as well as defendant HQZ Enterprises and its other affiliates, had knowledge and expertise in financial and business matters and specifically with respect to real estate development.

And at ¶ 84:

[u]pon information and belief, defendants made oral and written representations to plaintiffs and the class regarding their returns on investment and cash and tax benefits apart from the Offering Memorandum. These further representations occurred, upon information and belief, both before the closing and thereafter in connection with further solicitation of limited partners.

With pleadings such as these, defendants are hard put to defend themselves from the charges against them. The statements alleged—within plaintiffs' knowledge and thus not properly alleged on information and belief, *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972)—are unembarrassed by details of time, place or speaker. When suing numerous defendants, plaintiffs are obliged to "allege specifically the fraud perpetrated by each defendant." *Natowitz v. Mehlman*, 542 F.Supp. 674, 676 (S.D.N.Y.1982) (Duffy, J.) (dismissing securities claim by limited against general partners in real estate venture). Unnamed statements by anonymous defendants do not satisfy this obligation.

The next most serious shortcoming of the complaint is its failure to allege specific facts from which an inference of fraud can be drawn. This absence is particularly troublesome because it afflicts the most colorable assertions of securities fraud that the complaint offers. These are, to present two examples, the claims that the defendants knew prior to the closing date that a zoning variance had been denied, and that they misrepresented their own net worth and ability to contribute capital to the real estate venture. At ¶ 73, the complaint avers that "[i]n fact, as defendants knew at this time, a variance had been denied to use these properties as an artist in residence building." There is no indication of when the variance was denied or even a concrete referent for the vague "at this time." Later, the complaint avers that "[d]uring the solicitation and sale of the limited partnership interests, the defendants made oral and written representations, in addition to the Offering Memorandum and Partnership Agreement, concerning their present and future net worth and their abilities to make the partnership business profitable and successful and have the limited partners obtain a substantial return on their investment. In view of the foregoing [failures to make certain payments] all of these representations were false and misleading when made...." Complaint at ¶ 114. Not only are the statements unspecified and the defendants unnamed, but the factual basis for claiming falsity is entirely absent.

It would be pointless to continue faulting the complaint for deficiencies under Rule 9(b), F.R.Civ.P. The court grants the motions to dismiss. In light of this ruling, the motion for a stay of discovery is moot.

IT IS SO ORDERED.

