Lawrence **OLECK** and Theodore **Oleck, Plaintiffs,**

v.

Alan H. **FISCHER** et al., **Defendants.**

No. 73 Civ. 1460.

United States District Court, S. D. New York.

Oct. 17, 1975.

Shatzkin, Cooper, Labaton, Rudoff & Bandler, New York City, for plaintiffs; · Edward Labaton, Joel C. Feffer, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for defendant Arthur Andersen & Co.; Edward J. Ross, James D. Zirin, James R. Peterson, New York City, Charles W. Boand, Wilson & McIlvaine, Chicago, Ill., of counsel.

## MEMORANDUM

LASKER, District Judge.

In this action alleging violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and Rule 10b–5, 17 C.F.R. 204.10b–5, Arthur Andersen & Co. (Andersen) moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint for failure to state a claim upon which relief can be granted and for failure to state a claim with the particularity required by Federal Rule of Civil Procedure 9(b).

While we agree with Andersen that the complaint is poorly pleaded, we nevertheless find both that it states a claim and that, with one minor qualification, it complies with Rule 9(b). Moreover even if we were to conclude that the complaint falls shy of the requirements of Rule 9(b) there would be no justification for granting Andersen's request that it be dismissed without the right to replead. Finally, we note that whatever deficiency exists because of the opacity of the complaint is remedied by the massive detail of plaintiffs' papers on this motion, in particular by the affidavit of plaintiffs' accountant, Ralph Rehmet.

## I.

On March 5, 1971, Lawrence and Theodore Oleck (the Olecks) sold their stock in Blue Circle Telephone Answering Service, Inc. (Blue Circle) to Sherwood Diversified Services, Inc. (Sherwood). Only $98,000. of the $728,000. purchase price was paid in cash, the remainder consisting of Sherwood's promissory notes payable over a period generally of five years. In March, 1973, with $400,000. still unpaid on the Olecks' notes, Sherwood filed a petition under Chapter XI of the Bankruptcy Act.

The purchase agreement provided that:

"[Sherwood] has furnished [the Olecks] with a true copy of the annual report of [Sherwood] audited by Arthur Andersen & Co., dated October 30, 1970, which includes a balance sheet as of February 28, 1970."

(Complaint, ¶ 20; Affidavit of Lawrence Oleck ¶ 4). The Olecks contend that they relied upon Andersen's certification of the February 28, 1970 financial statement (1970 statement) and that the statement was materially false and misleading. Specifically, it is asserted that the 1970 statement failed fairly to portray the financial consequences of Sherwood's acquisition and subsequent resale of the U. S. Media International Corporation (U. S. Media) and that at the time Andersen prepared the statement it "knew, or in the exercise of reasonable diligence should have known" that the statement was misleading. (¶ 26(a)) Since the adequacy of the allegations as to Andersen is the subject of this motion, they are set forth in full in the margin.[1]

---

1. "2. As hereinafter set forth, in connection with the purchase and sale of securities within the Southern District of New York, defendants, separately and acting in concert, by the use and means of instrumentalities of interstate commerce and of the mails and other means:

   (a) employed devices, schemes and artifices to defraud;

   (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

   (c) engaged in acts and practices which would and did operate as a fraud and deceit upon the plaintiff.

   3. On or about March 5, 1971, plaintiffs sold all the outstanding shares of common stock of Blue Circle Telephone Answering Service, Inc. ("Blue Circle") to Sherwood

Diversified Services, Inc. ("Sherwood") for an aggregate consideration of $728,411.75, of which $98,411.75 was in cash and the balance by promissory notes payable over a period of five years and nine months beginning April 1, 1971."

\* \* \* \* \*

"20. The agreement pursuant to which plaintiffs sold their Blue Circle stock stated: 'The purchaser has furnished the sellers with a true copy of the annual report of the purchaser [Sherwood] dated October 30, 1970 which includes a balance sheet as of February 28, 1970.'

21. Defendant Arthur Andersen & Co. (hereinafter "Andersen") is a partnership transacting an accounting and financial management business with an office at 1345 Avenue of the Americas, New York, N.Y.

22. Andersen was, and is, a public accounting firm holding itself out to the public as (a) possessing and exercising the highest standards of accounting skills; (b) specially qualified in the auditing of the accounts and businesses and the preparation of financial statements and reports based on its examinations and audits; (c) independent certified accountants fully familiar with generally accepted auditing standards and accounting principles and qualified to express opinions as to whether financial statements and reports reflected fairly the financial condition of business concerns; and (d) fully familiar with generally accepted auditing standards and accounting principles and the accounting practices of the Securities and Exchange Commission.

23. During the fiscal years ended February 28, 1970 and February 28, 1971, Andersen served as independent certified public accountants to Sherwood and conducted annual audits and examinations of their books, records and accounts and based upon said audits and examinations of the financial statements of Sherwood for the fiscal year ended February 28, 1970 certified that said financial statements fairly presented the financial position of Sherwood in accordance with generally accepted accounting principles.

24. Andersen knew that the financial statements and reports prepared by it would be distributed to and relied upon by members of the public and by potential acquisitionees of Sherwood who would acquire securities of Sherwood in reliance upon the said statements.

25. (a) Sherwood's financial statements for the fiscal year ended February 28, 1970, which were completed in November 1970 and certified to by Andersen as of October 30, 1970, stated that Sherwood had earned $706,600 after taxes and after a loss in connection with the U.S. Media transaction (net of income tax benefits) in the amount of $130,000.

(b) The said financial statements stated that 'in November 1969 the Company [Sherwood] entered into an agreement to acquire the net assets of U.S. Media International Corporation for a purchase price that was to be based on the net earnings of the acquired business for the eleven months ended February 28, 1970. In January 1970, the agreement was finalized and the net assets transferred to a wholly-owned subsidiary of the Company. At that time, Sherwood released, as a preliminary payment for the acquisition, $2,000,000 in cash, a promissory note for $750,000 and 303,571 shares of Sherwood common stock. Because of difficulties encountered in complying with certain provisions of the agreement, both Sherwood and the selling shareholders agreed, subsequent to February 28, 1970, to cancel the acquisition and return all consideration previously advanced. This cancellation was finalized on October 30, 1970 and, at that time, Sherwood received $500,000 in cash, a 10% note receivable from U.S. Media for $1,570,000 and 280,485 of its previously issued shares.'

26. The statements referred to in paragraph 25 were false and misleading in that:

(a) By November 1970, Andersen knew, or in the exercise of reasonable diligence, should have known, that the loss resulting from the U.S. Media transaction amounted to more than $2,500,000 and that as a result Sherwood had, rather than earning a profit of $706,600, in fact sustained a substantial loss in the year ended February 28, 1970.

(b) The U.S. Media acquisition was not cancelled. In fact, U.S. Media had been purchased from certain individuals who refused to rescind or cancel their contract. Instead, Sherwood sold the net assets of U.S. Media to a corporation ("New U.S. Media") formed solely to acquire said assets. Upon the acquisition by New U.S. Media of the said net assets, its current liabilities exceeded its current assets by almost $2,000,000. Prior to the said sale to New U.S. Media, the U.S. Media business was operating at a substantial loss; its gross profit margin had dropped from 15% in the thirteen months ended February 28, 1970 to 5% for the seven months ended September 30, 1970. U.S. Media sustained an operating loss of $914,000 in the eight months ended October 30, 1970, including a loss of $221,000 in October 1970.

(c) Andersen knew that Sherwood had sold the U.S. Media business, not because of difficulties encountered in complying with the acquisition agreement, but because the selling stockholders of U.S. Media had made material misrepresentations.

(d) My (sic) October 23, 1970, Andersen was aware that notes issued to Sherwood by

## II.

*The Particularity Requirement*

██ Andersen argues that the complaint fails to meet the standards of particularity required by Rule 9(b) in three respects. The "most prominent" of these (Defendant's Memorandum, at 3) is asserted to be that the allegations against Andersen are made on information and belief. However, this factor does not automatically render a complaint inadequate. Allegations on information and belief can meet the standards of Rule 9(b) so long as the pleading includes a statement of the facts on which the belief is founded. *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir. 1974); 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1298, at 416 (1969). The Olecks' complaint, particularly in paragraphs 25 and 26, sets forth the factual basis for their claim in sufficient particularity to meet the Rule's requirements. In *Schlick v. Penn-Dixie Cement Corp., supra,* the complaint had been dismissed for failure to meet the requirements of Rule 9(b). The Court of Appeals reversed because, in addition to a conclusory allegation of fraud and deceit, the complaint specified the transactions alleged to have been fraudulent and the manner in which they were alleged to be fraudulent. The allegations here pass the *Penn-Dixie* test. In addition to identifying the alleged misrepresentations (¶ 25), the complaint specifies various respects in which the statements are alleged to be misleading. (¶ 26) In contrast, the complaint dismissed by the court in *Goldberg v. Shapiro,* CCH Fed. Sec.L.Rep. ¶ 94,813 (S.D.N.Y. October 1, 1974), on which Andersen relies, contained no more than a bare assertion that the defendant violated Rule 10b–5 by "materially understating" and "substantially overstat[ing]" various items in the financial statement there at issue. *Goldberg v. Shapiro, supra* at 96,717.

██ Andersen next argues that even assuming a basis for the Olecks' allegations on information and belief, their complaint fails under Rule 9(b) because "it is not possible to deduce either the operative facts or a theory upon which plaintiffs seek recovery." (Defendant's Memorandum at 6) The contention is without merit. Theories of recovery need not be pleaded, 5 C. Wright & A. Miller, Federal Practice and Procedure, Civil § 1219 (1969) and the complaint sufficiently alleges the facts on which the action is based. The complaint states a 10b–5 claim centering on an allegation that the 1970 statement misrepresented the facts surrounding Sherwood's U. S. Media transactions and obscured Sherwood's resultant exposure to severe losses. It specifies a statement alleged to be misleading, the manner in which it is alleged to be misleading and the categories of information it misrepresented. More than this is not required. *Schlick v. Penn-Dixie Cement Corp., supra,* 507 F.2d at 379.

As in *Felton v. Walston and Co., Inc.,* 508 F.2d 577 (2d Cir. 1974), in which the Second Circuit recently reversed a

New U.S. Media in the amount of $1,570,000, as well as a $1,000,000 loan payable to Sherwood by New U.S. Media, were of questionable value and that there was serious exposure to Sherwood on a guarantee by Sherwood of a $2,000,000 U.S. Media loan.

(e) By October 30, 1970, Andersen knew and omitted to state that the potential loss exposure to Sherwood by virtue of the questionable value of the aforesaid $1,570,000 in notes, the $1,000,000 loan and the $2,000,000 loan guarantee was great enough to wipe out the net equity of Sherwood.

(f) Prior to the certification of the 1970 financials, Andersen was aware that each of Sherwood's subsidiaries was being operated autonomously and that there were inadequate controls of the operations by Sherwood and that by virtue thereof the earnings reflected in the February 28, 1970 statement could not be relied upon.

27. Plaintiffs entered into the transaction referred to herein in reliance upon the certification of the February 28, 1970 financial statements of Sherwood, as well as the representations that there had been no adverse material adverse (sic) change thereafter."

finding that the complaint against an accounting firm failed to particularize the allegations adequately, so here:

"While the allegations here are not as specific as might be desired . . . they canot be characterized as merely conclusory since they are clearly much more than a bald assertion that [the defendant] engaged in fraudulent acts. It may well be that plaintiffs have no claim against [the defendant] but the proper manner in which to determine whether a claim exists is to require an answer, and, if necessary, a trial of those issues. This result is especially appropriate since in applying rule 9(b) we must not lose sight of the fact that it must be reconciled with rule 8 which requires a short and concise statement of claims.

We realize that one purpose of rule 9(b) is to protect reputations of accountants and other professionals from scurrilous and baseless allegations of fraud. However, rule 9(b) does not insulate professionals from claims of fraud where a complaint alleges the fraudulent acts with particularity . . . ." 508 F.2d 577, 581 (2d Cir. 1974) (citations omitted).

■ Andersen makes a third 9(b) challenge specifically directed at ¶ 26(f) of the complaint. That paragraph contains the only allegation against Andersen not based on the alleged misrepresentations involving the U. S. Media transactions. It asserts the rather cryptic charge that Andersen was aware of the "autonomous" operations of Sherwood's subsidiaries, the "inadequate controls" over their operations and the consequent unreliability of the earnings reflected in the 1970 statement. In contrast to the remainder of the complaint, no factual basis for this allegation is pleaded and its terms are as conclusory as those held impermissibly vague in

Goldberg v. Shapiro, supra, and Segal v. Gordon, 467 F.2d 602 (2d Cir. 1972). We agree with Andersen that this paragraph fails to meet the requirements of the Rule.

## III.

*The Failure to State a Claim*

■ As a second line of defense Andersen argues that even if the complaint meets the requirements of Rule 9(b), it fails to state a claim upon which relief can be granted. Andersen contends first, that the Olecks have failed adequately to allege the scienter element required in an action brought under Rule 10b–5 and second, that if the Olecks assert that Andersen's violation lay in providing an inadequate reserve in the 1970 statement, the proposition fails to state a claim as a matter of law. We disagree with both arguments. The scienter requirement of 10b–5 has been accurately defined as "something short of specific intent to defraud . . . and something more than 'mere' negligence." *Republic Technology Fund, Inc. v. Lionel Corp.*, 483 F.2d 540, 551 (2d Cir. 1973) and cases cited there. The complaint here charges that at the time it prepared the 1970 statement Andersen "knew or in the exercise of reasonable diligence should have known" that the U. S. Media transaction had caused Sherwood a substantial loss for the year covered by the statement, that Andersen "knew" that the reason given for the sale of U. S. Media was false, that Andersen "was aware" that various debts of New U. S. Media[2] to Sherwood were of doubtful collectibility and that there was serious exposure to Sherwood on a loan guarantee to U. S. Media, and that Andersen "knew and omitted to state" that Sherwood's total potential loss on the U. S. Media transaction was great enough to wipe out its net equity.

2. New U.S. Media is the name of the corporation formed to repurchase the U.S. Media assets from Sherwood. The debts of New U.S. Media to Sherwood included over $1,500,000 in notes issued in connection with

its purchase of U.S. Media assets and a subsequent $1,000,000 loan by Sherwood to New U.S. Media. See Complaint, ¶26(b) and (d), note 1, *supra*.

(Complaint ¶ 26) These allegations are sufficient to state the culpability, or scienter, requisite in a complaint for a violation of Rule 10b–5. The Olecks need only show

"that [Andersen] 'had actual knowledge of any misrepresentations and omissions' it made, or that [Andersen's] 'failure to discover the misrepresentations and omissions amounted to a wilfull, deliberate or reckless disregard for the truth that is the equivalent of knowledge.' And it has been said that 'knowledge of the fact that the figures created a false picture is enough . . .' to constitute scienter." *Herzfeld v. Levanthol, Krekstein, Horwath & Horwath*, 378 F. Supp. 112, at 126 (S.D.N.Y.1974), citing *Republic Technology Fund, Inc. v. Lionel Corp.*, 483 F.2d 540, 551 (2d Cir. 1973); *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1304–06 (2d Cir. 1973) (en banc); *Cohen v. Franchard Corp.*, 478 F.2d 115, 123 (2d Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L. Ed.2d 106 (1973); and *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 445 (2d Cir. 1971).

Andersen's contention that the allegation it "knew or should have known" in ¶ 26(a) amounts only to an averment of negligence is unconvincing. The phrase may adequately describe a "failure to discover" amounting to "deliberate disregard for the truth." *Herzfeld, supra.*

Finally, Andersen asserts that at most the complaint boils down to a charge that in the 1970 statement it established an inadequate reserve against the potential loss from the U. S. Media transaction and that such an allegation, as a matter of law, does not constitute a claim under Rule 10b–5. The first argument is unpersuasive and the second misstates the law. The Olecks do assert that the adequacy of the reserve is a central part of the case. Nevertheless, Andersen's analysis is not a fair construction of the thrust of the complaint. The Olecks raise not only the issue of the adequacy of the reserve but the larger question whether the 1970 statement misrepresents the total impact of the U. S. Media transaction.

Moreover, the law does not preclude imposition of liability under Rule 10b–5 for failure to establish an adequate reserve. *Escott v. Barchris*, 283 F.Supp. 643 (S.D.N.Y.1968), on which defendant relies, is not to the contrary. It is true that in *Barchris* Judge McLean rejected a claim similar to the Olecks. He did so, however, not because a 10b–5 claim could not be predicated on the failure to establish an adequate reserve in a financial statement but because the evidence did not convince him that the accountant's judgment was "so clearly wrong that the balance sheet can be found to be false or misleading . . . ." 283 F.Supp. at 666. Far from supporting Andersen's theory that an accountant's failure to establish an adequate reserve is non-actionable because it involves matters of professional judgment only, *Barchris* is clear authority for the proposition that in appropriate circumstances the failure to establish such a reserve is actionable. In sum, whether the inadequacy of a reserve is of sufficient magnitude to constitute a securities fraud is a question of fact which cannot be disposed of on a motion to dismiss.

Andersen's other claims as to the insufficiency of the complaint all appear to go to the merits rather than the sufficiency of the pleading. Such matters as the connection, or lack of it, between Andersen's knowledge of facts in the Fall of 1970 and the alleged misrepresentations in the financial report for the year ending February 28, 1970 (Defendant's Memorandum at 11–12) and the reasonableness of the Olecks' reliance on the 1970 statement (Defendant's Reply Affidavit at 2–7) are matters of factual dispute and interpretation. Like the arguments of the defendant in *Felton Walston and Co., Inc., supra*, at 655 they may have merit, but the proper

way to determine this "is to require an answer, and, if necessary, a trial of [the] issues." 508 F.2d at 581.

Similarly, the matters on which Andersen complains it is "left to speculate" (Defendant's Memorandum at 12) are remediable, if necessary, by discovery. It is not the function of a complaint to provide the detail demanded by defendant's papers. Federal Rule of Civil Procedure 8(a).

The motion to dismiss ¶ 26(f) for failure to comply with Rule 9(b) is granted unless, within twenty days, the plaintiffs replead their allegation in compliance with the Rule. In all other respects the motion is denied.

It is so ordered.