Frank DENNY, Plaintiff,

v.

Charles F. BARBER et al., Defendants.

No. 76 Civ. 548 (MEL).

United States District Court,
S. D. New York.

Jan. 11, 1977.

Demov, Morris, Levin & Shein, New York City, for plaintiff; Irving Bizar, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant The Chase Manhattan Corp. and individual defendants; William E. Jackson, Briscoe R. Smith, Kenneth A. Perko, Jr., Peter A. Copeland, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendant Peat, Marwick, Mitchell & Co.; William E. Hegarty, Allen S. Joslyn, Patricia A. Pickrel, New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

Frank Denny has commenced an action alleging violations of Sections 10, 18 and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j, r and t and the corresponding "rules" (presumably, Rule 10b–5, 17 C.F.R. 240 10b–5). All the defendants move for an order of dismissal, arguing that the complaint fails to state a claim upon which relief can be granted (Rule 12(b)(6) of the Federal Rules of Civil Procedure) and also fails to satisfy the standard of specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.

The complaint levels vague allegations of fraud against the Chase Manhattan Corporation, (hereinafter the Corporation), its directors and former directors, and the Corporation's independent accountant, Peat, Marwick, Mitchell & Co. (hereinafter PMM). It is claimed that since January 1, 1973, the defendants have conspired to conceal various aspects of the Corporation's alleged financial infirmity. The chief engine of the claimed conspiracy is an unidentified series of "false and misleading statements and reports to the public . . . that misrepresented the actual condition of [the] Corporation." Defendants are said to have disseminated these publications in a willful attempt to distort the public's view of the Corporation's actual financial disposition. The plaintiff contends that while the Corporation was transmitting a picture of fiscal health, it was actually sinking into a vortex of ruin.

What defendants should have revealed in the public disclosures is obscurely described in paragraph 14 of the complaint. It is alleged that in order to comply with the antifraud provisions of the federal securities laws defendants should have reported the following:

1. The Corporation, acting either through its subsidiary, the Chase Manhattan Bank (hereinafter the Bank), or through a trust that it supervises and that is funded and ad-

vised by the Bank, has made unspecified loans in connection with a variety of real estate activities (including, but not limited to, real estate investment trusts). The plaintiff believes that "it is highly unlikely that [the] Bank will recover the principal loaned or any of the interest due and it is reasonably foreseeable that [the] Bank and [the] Corporation has incurred and may incur losses" as a result of these "risky and speculative" real estate loans.

2. Because of an internecine dispute between the Bank and the Corporation's real estate investment trust, "it is highly doubtful that [the] Bank will collect any fees for acting as advisor."

3. Both the Corporation and the Bank have made "risky and speculative" investments in unnamed "States and other political sub-divisions of the United States, including the City and State of New York . . ." Such investments may, claims plaintiff, reap merger returns. And, in the case of the investments in debt obligations of the City of New York, because the Corporation is claimed to have invested on the basis of "incomplete, false and fraudulent representations" and later sold its interest to others, the Corporation may be liable for the sale (this latter apprehension appears to be based on a novel theory of 10b–5 liability). All this produces "a significant likelihood that [the] Corporation and [the] Bank has [sic] incurred and will incur" substantial losses.

4. The Corporation has made a number of "risky and speculative" loans to foreign business enterprises, foreign governmental agencies, foreign governments and "others". It is al-

leged that these commitments may be financially disastrous.

In short, Denny is complaining of misrepresentations concerning the full panoply of the Corporation's commercial lending operations. The majestic breadth of plaintiff's claim—which literally takes in the world of financial operation—is, however, unsullied by a single detail. For example, not one loan is specified; and, of the numerous and sundry beneficiaries of the Corporation's misguided largesse—real estate trusts, realtors, builders, cities, states, sub-division of cities and states, foreign agencies, foreign enterprises, foreign governments and "others"—only the Corporation's real estate trust and the City of New York are actually named.

The unspecified transactions are not, ostensibly, the target of the complaint. Rather, it is "the false and misleading publications," issued by the Corporation, certified by PMM, and disseminated during the relevant period, that are found to be offending.[1]

■ Defendants argue that this complaint is so vague that it must be dismissed. We agree. The heart of plaintiff's claim is that the defendants issued false and misleading publications; but not a single publication is identified; nor is the way in which the publications were misleading adequately stated. Perhaps the unnamed publications were misleading because they failed to disclose the events listed in paragraph 14 of the complaint, but those "events" are themselves so vague and premature that they cannot be said to be events in any meaningful sense of that word.

■ We agree that Rule 9(b) must be *reconciled* with Rule 8 which encourages simplicity of pleading. *Felton v. Walston & Co., Inc.*, 508 F.2d 577, 581 (2d Cir. 1974). But this reconciliation should leave both

---

1. The plaintiff also charges the defendants with having followed accounting and other unnamed "practices" that were designed to hide the ominous predicament of the Corporation (¶ 14(f), ¶ 14(g)). It is difficult to tell from the complaint whether these "practices" are alleged to constitute a distinct scheme or artifice to de- fraud, or whether they are mentioned as examples of material facts that should have been revealed. It is unnecessary to guess the role that these "practices" are designed to play, since in either case, they are too vaguely pleaded to notify the defendants of the particular circumstances constituting fraud.

rules intact; indeed, neither logic nor grammar requires that a specific statement of facts amounting to a claim of fraud need be anything but brief.

The law does not excuse plaintiff's failure to identify the offending publications. *Felton v. Walston & Co., Inc., supra*, 508 F.2d 577; *Rich v. Touche Ross & Co.*, 68 F.R.D. 243 (S.D.N.Y.1975); *cf. Oleck v. Fischer*, 401 F.Supp. 651 (S.D.N.Y.1975). The familiar plaint that the details of an alleged fraud lie in defendant's ken has no convincing ring when the details at issue are the identities of documents that have been widely disseminated to and assimilated by the investing public.

Beyond the failure to denominate the publications, the complaint violates Rule 9(b) because it does not describe the manner in which the reports are claimed to be misleading. *Cf. Oleck v. Fischer, supra*, 401 F.Supp. 651. Plaintiff alleges that "[T]he statements projected a picture of the Corporation which was sound financially, experiencing substantial growth and assets," when, by plaintiff's account, the Corporation was heading toward ruin along several avenues. This sort of characterization of the allegedly deceptive quality is little more than an assertion that the financial statements were "deceptive" or "understated." A more detailed characterization must be provided to comply with Rule 9(b). *Felton v. Walston & Co., Inc., supra*, 508 F.2d 577; *Goldberg v. Shapiro*, CCH Fed.Sec.L.Rep. ¶ 94,813 (S.D.N.Y.1974).

The requirements of the rule are not met by the allegation that the publications deceptively failed to reveal the "events" described in paragraph 14. As discussed above, plaintiff's paragraph 14 litany is that the Corporation had been involved in potentially unprofitable financial transactions on a worldwide scale. Yet not a single transaction is identified. To say that the defendants misled by failing to report the transactions is to say nothing more than: "In unidentified publications, these defend-

ants failed to disclose any one of a number of unidentified dealings that may turn out to be financially unrewarding." This fails to notify defendants of the claims against them, Rule 8 of the Federal Rules of Civil Procedure; even less does it apprise them of the particulars of the claimed fraud. Rule 9(b) of the Federal Rules of Civil Procedure.

■ The "facts" (¶ 14) not disclosed suffer from an infirmity other than vagueness. They are embryonic. As far as we can read this complaint, it seems peculiarly concerned with the merely contingent, with events not yet unfolded, and with reports that lack sufficient prevision of these yet underdeveloped events. The antifraud provisions of the federal securities laws compel disclosure of a certain kind of material fact. They do not require forecasting.[2]

■ The critical portions of the complaint are written on the basis of information and belief. Fraud may be pleaded in this manner, but only if the plaintiff states the facts that give rise to his belief that a fraud has been perpetrated. *Schlick v. Penn-Dixie Cement Corporation*, 407 F.2d 374 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972); *Oleck v. Fischer, supra*, 401 F.Supp. 651; *Lewis v. Varnes*, 368 F.Supp. 45 (S.D.N.Y. 1974), *aff'd*, 505 F.2d 785 (2d Cir. 1974); *see also, Segan v. Dreyfus Corporation*, 513 F.2d 695 (2d Cir. 1975). At the very least, plaintiff must disclose those facts that have led him to believe that defendants' publications are false. This is not a burdensome requirement. Certainly, the plaintiff can describe the event (or events) that made him perceive the falsity of the representation that had been made. Moreover, the facts recited must be such as to permit an inference of fraud. See *Segal v. Coburn Corporation of America*, CCH Fed.Sec.L. Rep. ¶ 94,002 at 94,020 (E.D.N.Y.1973): "The allegations of wrongdoing are not supported; they remain bare assertions that

---

2. On the contrary, forecasting is made perilous by Rule 10b–5. If defendants had described the vague contingencies limned in paragraph

14 and reality had provided a happier turn of events, would not defendants have been liable for their gloomy publications?

imposes on recited events a gratuitous imputation of misconduct that does not flow as an inference from the facts put forward." *See also, Segal v. Gordon, supra,* 467 F.2d at 608; *Goldberg v. Shapiro, supra,* CCH Fed.Sec.L.Rep. ¶ 94,813 at 96,717. This requirement, however, must be realistically applied. The imputation of culpable misconduct most often requires close scrutiny of complex facts, and at this point the mandate of Rule 8 becomes paramount. An undue fixation with the principle of Rule 9(b) would lead inevitably to a requirement that evidentiary matter be pleaded. Indeed, a recognition of this limit is inherent in the second sentence of Rule 9(b) itself, which states that "Malice, intent, knowledge, and other condition of mind . . . may be averred generally."

What we have said so far applies as well to the claims against PMM. Like the charges against the Corporation and its directors, the charges against PMM are based on a belief which so far as the complaint goes may have been formed "in the air," without empirical justification.

Complaints should not be conceived merely as tokens, guaranteeing access to a world of discovery. *See, Segal v. Gordon, supra,* 467 F.2d 607–08: "A complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should serve to seek redress for a wrong, not to find one." Neither plaintiff nor his counsel are entitled to roam through a defendant's files at the mere drop of a "complaint."

▪ For the foregoing reasons, the complaint is dismissed for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure.[3] Plaintiff may replead within twenty days, upon an adequate description of the facts contributing to his various be-

---

3. We need not therefore decide whether the complaint states a claim upon which relief can be granted, *Lewis v. Varnes, supra,* 368 F.Supp. 45, at 47.

4. Although none of the parties has briefed the point, the Court notes that the complaint seeks compensation for losses that have not yet been

liefs and upon a particular statement of the alleged fraud.[4]

It is so ordered.

suffered. It is alleged that the Bank and the Corporation "have incurred and may incur losses." We do not understand why past losses have not been quantified, if indeed they have already occurred. Insofar as the complaint seeks damage relief for losses yet untolled, its prayer is premature.