**Robert and Donna AIZUSS,
et al., Plaintiffs,**

v.

**COMMONWEALTH EQUITY TRUST,
et al., Defendants.**

Civ. No. S–93–712 DFL PAN.

United States District Court,
E.D. California.

Dec. 21, 1993.

Michael Andrew Bishop, Matheny Poidmore and Sears, Sacramento, CA, for plain-

tiffs Shaun T. Gloude, Shaun Tara Gloude, P.C.

Richard G. Osborn, Osborn and Associates, Los Angeles, CA, for defendant Stephen H. Gold.

Frederic A. Fudacz, Thomas D. Long, Jean Spitzer, John D. Adkisson, Nossaman Guthner Knox and Elliott, Los Angeles, CA, for defendants William D. Markenson and Nossaman, Gunther, Knox & Elliott.

Dean S. Krystowski, Shearman and Sterling, San Francisco, CA, for defendants Tjarda Clagett and Merrill Lynch BFS.

Alan G. Perkins, Matthew W. Powell, Paul A. Dorris, Wilke Fleury Hoffelt Gould and Birney, Sacramento, CA, for defendants KPMG Peat Marwick and Leland King.

William I. Edlund, William O. Fisher, Morgan R. Smock, Pillsbury Madison and Sutro, San Francisco, CA, for defendants Jeffrey B. Berger and Howard E. Cohn.

Carrie Lee Early, Brodovsky and Brodovsky, Sacramento, CA, for defendants B & B Property and Joyce Berger.

Alvin R. Wohl, Robin Kerry Perkins, Wohl and Eggleston, Sacramento, CA, for defendants Doris V. Alexis, Richard Rathfon, Albert S. Rodda and Sonia Allen, sued as Sonia Sworak.

William B. Brodovsky, Carrie–Lee Early, Brodovsky and Brodovsky, Sacramento, CA, for Joyce Berger and B & B Property Inv. Development and Management Co., Inc.

## MEMORANDUM OF DECISION AND ORDER

LEVI, District Judge.

Plaintiffs are 163 shareholders of defendant Commonwealth Equity Trust ("CET"), a California Real Estate Investment Trust. They bring this action against CET, as well as several of CET's past and present trustees, its investment advisors, attorneys, investment bankers, and accountant.

Plaintiffs assert twelve causes of action in their first amended complaint. Three of the claims for relief are based on federal law: (1) claims for violations of §§ 12(2) and 15 of the Securities Act of 1933 (the "'33 Act"),

against all defendants except KPMG Peat Marwick ("Peat Marwick") and Nossaman, Guthner, Knox & Elliott ("Nossaman, Guthner"); (2) a claim under § 10(b) of the Securities Exchange Act of 1934 (the "'34 Act"), and Rule 10b–5 promulgated thereunder, against all defendants; and (3) a claim for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), against all defendants. The remaining claims are premised upon California law: (1) breach of fiduciary duty, against defendants Alexis, Gold, Markenson, Rathfon, and Rodda, who were or are trustees of CET; (2) violation of Cal.Corp.Code § 25401, against all defendants except Nossaman, Guthner; (3) fraud, against all defendants; (4) negligent misrepresentation, against all defendants; (5) negligence, against all defendants; (6) civil conspiracy, against all defendants; (7) professional negligence, against Peat Marwick; (8) professional negligence, against Nossaman, Guthner; and (9) alter ego liability, against defendants Jeffrey Berger and Joyce Berger.

All defendants except CET have moved for dismissal of the first amended complaint. Several defendants also have moved for sanctions. For the reasons discussed below, defendants' motions to dismiss are granted with respect to all federal claims. The court declines to exercise supplemental jurisdiction over plaintiffs' state law claims. Defendants' motions for sanctions under Fed.R.Civ.P. 11 and § 11(e) of the '33 Act are granted.

I

Plaintiffs began this action on April 27, 1993 and filed a first amended complaint on May 24, 1993. The first amended complaint alleges that the various plaintiffs purchased shares of CET from 1981 through 1990. CET was established in 1973 for the primary purpose of acquiring income-producing real property investments. CET conducted a continuous intrastate offering of its securities from approximately July 1973 through July 5, 1989. During that time, a dividend reinvestment program also was available to shareholders of CET. CET is operated under a Declaration of Trust, dated July 31, 1973, which sets forth the powers of CET's Board of Trustees. The Declaration of Trust

authorizes the Board to retain and consult an investment advisor; defendant B & B Property Investment ("B & B"), or an affiliate of B & B, served as CET's investment advisor beginning approximately in 1978. Defendants Jeffrey Berger and Joyce Berger are principal shareholders of B & B.

Plaintiffs allege that defendants committed numerous wrongful acts, which can be divided into several discrete episodes:

1) *Parthenia Street*—CET purchased the "Parthenia Street" shopping center for $5 million in 1985, and sold it some time in 1989 to Steve Wichard, an acquaintance of Jeffrey Berger, for $8 million. Wichard some time in 1990 resold Parthenia Street for $8.8 million to CET USA, a separate California Real Estate Investment Trust. Wichard received 100 percent financing from CET when he bought Parthenia Street; he repaid CET with the proceeds that he received from CET USA. CET in turn paid out dividends to shareholders from the $3 million profit it made as a result of the transactions.

Only one misrepresentation or omission *to plaintiffs*[1] concerning this episode is alleged: Defendants failed to disclose the Parthenia Street sale as the source of the dividends CET was distributing, thus falsely creating the impression that future dividends would be paid.

2) *Self–Administration*—On March 20, 1992, CET mailed a proxy statement to its shareholders, in which it disclosed that the Board had appointed a Self–Administration Committee. Plaintiffs allege that this proxy statement falsely represented that the Board intended to make CET self-administered,[2] in an attempt to discourage shareholders who were in favor of self-administration from withholding their proxy.

3) *B & B Agreement*—Plaintiffs allege that CET paid too much to amend its investment advisor agreement with B & B. Plaintiffs also allege that the multi-year term of the agreement violated Cal.Admin.Code § 260.140.94, which provides that an investment advisor service contract shall have a term of no more than one year. Plaintiffs allege three misrepresentations or omissions in this context. First, they allege that defendant Alexis misrepresented that defendant Markenson had obtained a waiver of the one-year term limitation. Second and third, plaintiffs allege that Nossaman, Guthner and Markenson fraudulently concealed the statutory term limitation set forth at § 260.140.94, as well as the existence of the multi-year contract with B & B.

4) *Hotels*—Plaintiffs allege that CET paid $2.4 million to the company that was managing four hotels for CET in order to terminate the management contract, despite the fact that the management company was indebted to CET. Another company owned by Jeffrey Berger then took over management of the hotels without having to bid competitively for the job. The only misrepresentation or omission alleged with respect to this episode is that the $2.4 million "loss" suffered by CET when it bought out the management company was never reflected on any CET financial statement.

5) *Liquidation of CET Shares*—Plaintiffs allege that CET liquidated some CET shares at a price greater than the actual value of the shares, even after CET stopped paying dividends to its shareholders. Plaintiffs do not allege any misrepresentations or omissions in this context.

6) *Misleading Financial Statements*—Plaintiffs allege that Peat Marwick and defendant King, the responsible principal in Peat Marwick, misled plaintiffs by failing to issue a " 'going concern' opinion" after CET's fiscal year 1990 ended, despite over $10 million in losses in that fiscal year.[3] There is also an allegation that King and Peat Marwick posted losses for CET for fiscal years

---

**1.** The other alleged misrepresentations or omissions with respect to Parthenia Street involve misleading statements or nondisclosures to the shareholders of CET USA. (*See* first amended complaint ¶¶ 46–51.)

**2.** By self-administration, plaintiffs apparently refer to administration of the properties held by CET without the use of an investment advisor such as B & B.

**3.** By "going concern" opinion, plaintiffs apparently mean a statement that, in the judgment of the accountants, there was doubt as to whether CET could continue as a going concern.

1990, 1991, and 1992 only in the last quarter of each fiscal year, even though they knew that the losses occurred over the entire fiscal years in question.

7) *Consulting Fees*—Plaintiffs allege that CET's "most recent" Form 10K misrepresented that CET has no full-time employees, despite the fact that defendant Allen has been paid $224,000 per year by CET to be a "consultant."

## II

The second and third claims for relief involve alleged violations of the federal securities laws. The second cause of action alleges that defendants violated §§ 12(2) and 15 of the '33 Act, codified at 15 U.S.C. §§ 77*l*(2) & 77*o*, which prohibit misrepresentations to buyers of securities, either orally or in prospectuses, by sellers of securities and establish liability for persons who control such sellers. The third claim alleges violations of Rule 10b–5, promulgated under § 10(b) of the '34 Act, which prohibits material misrepresentations or omissions in connection with the purchase or sale of securities. *See* 15 U.S.C. § 78j(b). Defendants argue that these claims should be dismissed for several reasons.

### A. *Statutes of Limitations*

■ The period of limitation for both a § 12(2) claim under the '33 Act and a § 10(b) action under the '34 Act has two components. First, there is a bar as to any action brought more than three years after the sale or purchase of the securities at issue. Second, an action must be brought within one year after plaintiffs obtain actual or inquiry notice of the facts constituting the violations. *See* 15 U.S.C. § 77m (period of limitations for § 12 claim); 15 U.S.C. § 78i(e) (period of limitations for a § 10(b) claim). The three-year component is an absolute bar that cannot be tolled. *See S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1308 (9th Cir.1982) (rejecting decisions that have applied equitable principles

to toll the statute of limitations with respect to § 12 claims); *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, ——, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991) (no tolling permitted of three-year bar when applied to 10b–5 actions).

■ Of the multitude of purchases listed in the first amended complaint, only three of the purchases of CET shares are alleged to have occurred within three years of the filing of the original complaint in this case on April 27, 1993. These are the purchases by plaintiffs James and Julie Chenu on June 4, 1990, plaintiff Grim on July 18, 1990, and plaintiff Veltre on August 10, 1990. All federal securities claims made in connection with all other purchases of CET shares are absolutely time-barred and are dismissed with prejudice.[4]

■ Defendants argue that the securities claims based upon the purchases of CET shares by plaintiffs Chenus, Grim, and Veltre fail because they were brought more than one year after those plaintiffs should have discovered the potential causes of action. Defendants base this argument on the fact that another CET shareholder filed a class action and derivative suit more than a year prior to the filing of this action. This was the *Luebkeman* lawsuit, filed in Sacramento Superior Court, which alleged that defendants had concealed the term limitation of § 260.140.94 of the California Administrative Code as well as the multi-year term of the management agreement with B & B. The *Luebkeman* plaintiff also alleged that CET paid too much to buy out the B & B management agreement. Notice of the *Luebkeman* lawsuit and several of its specific allegations was given in a supplement to a CET proxy statement first mailed to CET shareholders on or about April 16, 1992, more than a year before the filing of this action. (*See* Request for Judicial Notice of Defendants Cohn and Berger, Exhibit B.)

**4.** Plaintiffs attempt to avoid this conclusion by claiming that a "majority" of plaintiffs were "involved" in a dividend reinvestment program whereby they purchased shares in CET within three years of the filing of this action. However, dividend reinvestment in CET ended in 1989.

(*See* Supplemental Motion for Judicial Notice of Defendants Cohn and Berger, Exhibits A, B & D.) Thus, all plaintiffs except the Chenus, Grim, and Veltre cannot possibly amend their complaint to state valid federal securities claims based upon purchases of CET shares.

Once they received the proxy statement, plaintiffs Chenus, Grim, and Veltre had an obligation to exercise reasonable diligence in determining whether there was a basis for a lawsuit grounded on the allegations made in the *Luebkeman* action. However, plaintiffs did not file this action until more than a year had passed after they received actual or inquiry notice of such allegations. Plaintiffs therefore are barred from maintaining a § 12(2) or 10b–5 action based on the same allegations that were made in *Luebkeman*. See *Menowitz v. Brown*, 991 F.2d 36, 42 (2d Cir.1993); *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128–29 (1st Cir.1987); *Gaudin v. KDI Corp.*, 576 F.2d 708, 712 (6th Cir.1978). Thus, the securities claims concerning the length of the B & B management agreement and the California statutory requirement of a one-year term for investment advisor contracts must be dismissed with prejudice.

However, plaintiffs are not time barred from asserting securities claims based upon misrepresentations or omissions concerning events or episodes unrelated to the subject matter of the *Luebkeman* action. Defendants have not demonstrated that plaintiffs were placed on actual or inquiry notice as to those claims more than a year prior to the filing of this action.

### B. *Claims That Survive the Periods of Limitations*

Although plaintiffs Chenus, Grim, and Veltre are not barred by the relevant periods of limitations from asserting federal securities claims based on allegations that were not at issue in the *Luebkeman* action, such claims nonetheless must be dismissed.

#### 1. *Section 12(2) Claim*

█ Section 12(2) of the '33 Act, codified at 15 U.S.C. § 77*l*(2), provides that any person who

offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which

includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him.

In *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), the Supreme Court held that a "seller" under § 12(1) of the '33 Act, a provision closely related to § 12(2), is limited to the "owner who passed title, or other interest in the security, to the buyer for value" or to "the person who successfully solicit[ed] the purchase." *Id.* at 642, 647, 108 S.Ct. at 2076, 2078. The Court reserved judgment on whether this definition of "seller" also applies to § 12(2) of the '33 Act. See *id.* at 643 n. 20, 108 S.Ct. at 2076 n. 20.

The Ninth Circuit, as well as other circuits, have held that *Pinter*'s definition of a seller is applicable to § 12(2). *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 536 (9th Cir.1989); *Smith v. American Nat'l Bank & Trust Co.*, 982 F.2d 936, 941 (6th Cir.1992); *Ackerman v. Schwartz*, 947 F.2d 841, 844 (7th Cir.1991); *Wilson v. Saintine Exploration & Drilling Corp.*, 872 F.2d 1124, 1126–27 (2d Cir.1989); *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 634–35 (3d Cir.1989).

At oral argument on November 19, 1993, plaintiffs' counsel acknowledged that plaintiffs Chenus, Grim, and Veltre, who each made relevant purchases of CET shares in 1990, could not have received title to such shares directly from CET, because CET ended its initial offering of shares on July 5, 1989. Counsel also acknowledged that none of the defendants in this case solicited the purchases made by plaintiffs Chenus, Grim, and Veltre. Thus, no defendant qualifies as a "seller" with respect to such purchases. It follows that plaintiffs' § 12(2) claim must be dismissed with prejudice.[5]

---

**5.** Because no defendant in this case is a "seller"    for purposes of § 12(2), it is unnecessary to

### 2. Section 15 Claim

Section 15 of the '33 Act, codified at 15 U.S.C. § 77*o*, provides that "[e]very person who ... controls any person liable under sections 77k or 77*l* of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable." Since the § 12(2) claim is dismissed with prejudice, the § 15 claim likewise must be dismissed with prejudice. *See Verrecchia v. Paine, Webber, Jackson & Curtis*, 563 F.Supp. 360, 365 n. 5 (D.P.R.1982); *Payne v. Fidelity Homes of America, Inc.*, 437 F.Supp. 656, 658 (W.D.Ky.1977).

### 3. Section 10(b)/Rule 10b–5 Claim

■ An action brought under Rule 10b–5 must be based on misrepresentations made to the plaintiffs, or on material nondisclosures, not merely on mismanagement of the corporation or other breaches of fiduciary duty. *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). A statement is actionable under § 10(b) only if it is made "in connection with" the purchase or sale of a security. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1485 (9th Cir.1991). It is well settled that a 10b–5 plaintiff must demonstrate that he relied upon the misrepresentations in purchasing or selling the securities, or that a reasonable investor would have considered the nondisclosed facts important in making the investment decision. *See Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963–64 (9th Cir.1990); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 501 (9th Cir.1992); *Levine*, 950 F.2d at 1487; *Williams v. Sinclair*, 529 F.2d 1383, 1389 (9th Cir.1975), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976). In addition, allegations of securities fraud must be pleaded with particularity under Fed.R.Civ.P. 9(b). "Allegations based on 'information and belief' do not satisfy the particularity requirement of Fed.R.Civ.P. 9(b) unless the complaint sets forth the facts on which the belief is founded." *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1432–33 (N.D.Cal.1988). This requirement "applies even when the fraud relates to matters peculiarly within the knowledge of the opposing party." *Id.* at 1433.

Besides the claims of misrepresentations and omissions concerning the B & B multiyear management agreement, which are time-barred,[6] plaintiffs make the following allegations of misrepresentations or omissions to them: (1) by paying dividends out of the funds acquired by CET in the Parthenia Street transaction, defendants misrepresented that future dividends would be forthcoming; (2) a misrepresentation in CET's 1992 proxy statement as to the Board's intent to

reach defendants' alternative argument that a § 12(2) claim can be brought only in connection with purchases of securities in an initial offering.

**6.** Even if plaintiffs were not on inquiry notice as to these claims, allegations concerning misrepresentations or omissions with respect to the B & B management agreement would have to be dismissed. First, the CET offering circulars, of which the court takes judicial notice, *see Townsend v. Columbia Operations*, 667 F.2d 844, 848 (9th Cir.1982), in fact disclosed the multi-year term of the B & B management agreement. (*See* Request for Judicial Notice of Defendants Cohn and Berger, Exhibits C through J.) Thus, allegations of a misrepresentation or omission on this point would have to be dismissed with prejudice. *Cf. In re VMS Limited Partnership Sec. Litig.*, 803 F.Supp. 179, 191–93 (N.D.Ill.1992) (taking judicial notice of offering memoranda relied upon by plaintiffs and dismissing securities claims with prejudice after finding that those documents disclosed the items alleged in the complaint not to be disclosed). Second, defendants had no duty to disclose the one-year term limitation provided by the California Administrative Code. *See Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317, 1323 (7th Cir.1988) (Easterbrook, J.) (holding that "[t]he securities laws require the disclosure of information that is otherwise not in the public domain" and that "[s]ellers of securities need not 'disclose' the statutes at large of the states in which they operate"). Plaintiffs' allegation that defendants failed to disclose the one-year limitation therefore would have to be dismissed with prejudice. Third, plaintiffs fail to provide a date for the alleged misrepresentation by defendant Alexis in which she stated that CET had obtained a waiver of the one-year term limit. Thus, this allegation would have to be dismissed because it is not pleaded with sufficient particularity under Fed.R.Civ.P. 9(b). *Compare Semegen v. Weidner*, 780 F.2d 727, 735 (9th Cir.1985) (holding fraud claims pleaded in conformance with Rule 9(b) because plaintiff stated the time, place, and nature of the alleged fraudulent activities).

become self-administered; (3) failure to disclose the $2.4 million "loss" suffered by CET when it bought out the contract with the management company that managed CET's four hotels; (4) failure by Peat Marwick and King to issue a "going concern" opinion in connection with CET's $10 million loss in fiscal year 1990, as well as misrepresentations and omissions in CET's fiscal year 1990, 1991, and 1992 financials concerning the timing of the losses CET had sustained; and (5) a misrepresentation in CET's "most recent" Form 10K that CET has no full-time employees, despite the fact that defendant Allen has been paid $224,000 to be a "consultant." As currently pleaded, none of these alleged misrepresentations or omissions can provide the basis for a 10b–5 action.

### a) *Parthenia Street*

The only misrepresentation alleged with respect to Parthenia Street is that defendants "manufactured" the sale from CET to Wichard and then to CET USA to move cash from CET USA to CET "to allow the continuance of payments to shareholders of 'dividends' to deceive [sic] shareholders into believing CET was able to maintain its dividends." (First amended complaint ¶ 53.) Assuming, without deciding, that this could constitute an actionable misrepresentation or omission,[7] plaintiffs have not pleaded the allegation with sufficient particularity. Plaintiffs fail to indicate specifically when the sale of Parthenia Street from Wichard to CET USA took place, although they apparently believe it occurred some time in 1990. (*See* first amended complaint ¶¶ 41, 44.) Plaintiffs also do not indicate when CET distributed dividends to its shareholders with proceeds from the Parthenia Street transaction. Thus, the allegation of a misrepresentation

or omission concerning the Parthenia Street transaction must be dismissed.[8]

### b) *Self–Administration*

Plaintiffs allege a misrepresentation in CET's 1992 proxy statement as to the Board's intent to become self-administered. This allegation is insufficient to state a claim under § 10(b), since this "misrepresentation" was made well after plaintiffs purchased their securities. Plaintiffs could not possibly have relied on that statement when deciding to purchase their shares in CET. Thus, this portion of plaintiffs' 10b–5 claim is dismissed with prejudice.

### c) *Failure to Disclose "Loss" From Hotel Transaction*

Plaintiffs allege that defendants failed to disclose in any CET financial statements the $2.4 million "loss" suffered by CET when it bought out the contract with the company that managed CET's four hotels. (First amended complaint ¶ 78.)[9] However, the first amended complaint fails to allege when the "loss" occurred or which CET financial statements should have reflected such a "loss." If the $2.4 million payment was made after August 10, 1990, or if the first financial statement that should have reflected this transaction was made public after that date, then this nondisclosure could not be material, since it could not have affected the decision of plaintiffs to purchase shares in CET. As currently pleaded, the allegations with respect to omissions concerning the hotel transactions do not satisfy Fed.R.Civ.P. 9(b). Accordingly, such allegations are dismissed.

### d) *Failure to Include a "Going Concern" Qualification and Misrepresentations Concerning Posting of Losses*

On or about January 29, 1992, Peat Marwick apparently issued an opinion stating

---

7. *Compare In re Convergent Technologies Sec. Litig.,* 948 F.2d 507, 514 (9th Cir.1991) (rejecting contention that accurate description of strong first-quarter performance misled investors by implying that defendants expected the upward trend to continue throughout the year).

8. If the dividends from the Parthenia Street sale were not distributed until after plaintiff Veltre bought her CET shares on August 10, 1990, then any misrepresentation concerning the true nature of those dividends could not have been re-

lied on by plaintiffs in deciding to purchase shares in CET.

9. Plaintiffs allege "[u]pon information and belief [that] the $2.4 million was never shown as a loss on the financial statements of CET." (First amended complaint ¶ 78.) This is one of many allegations in the first amended complaint that impermissibly is based upon information and belief with no further indication of the facts upon which such belief is founded.

that there was substantial doubt as to CET's ability to continue as a going concern as a result of CET's fiscal year 1991 loss of $35.3 million. (*See* first amended complaint ¶ 96.) Plaintiffs apparently believe that CET's posted loss of $10.7 million for fiscal year 1990 should have resulted in a similar "going concern" opinion. However, the earliest a going concern opinion could have been rendered in connection with CET's fiscal year 1990 loss would have been some time after September 30, 1990, when CET's fiscal year ended. (*See* Request for Judicial Notice of Defendants Cohn and Berger, Exhibit K.) Since the last relevant purchase of CET shares occurred on August 10, 1990, any failure on the part of Peat Marwick or King to provide a going concern opinion in connection with losses posted for fiscal year 1990 could not have materially affected plaintiffs' decisions to purchase CET shares. Thus, this allegation of a material omission is dismissed with prejudice.

Plaintiffs' claims regarding the failure to disclose losses throughout fiscal years 1991 and 1992 similarly could not have been material nondisclosures since they could not possibly have been considered by an investor in August of 1990, or earlier, in deciding whether to purchase CET shares. These allegations therefore also are dismissed with prejudice.

Plaintiffs' allegation concerning the failure to report losses throughout fiscal year 1990 is not pleaded with sufficient particularity. First, the relevant allegation impermissibly is based only upon "information and belief" without any further elaboration of the facts underlying that belief. Second, plaintiffs do not identify with specificity the misleading financial documents that allegedly should have included the losses in question. Plaintiffs therefore have not satisfied the requirements of Rule 9(b). *See Ross v. Warner*, 480 F.Supp. 268, 271–72 (S.D.N.Y.1979); *see also Denny v. Barber*, 73 F.R.D. 6, 9 (S.D.N.Y. 1977) ("The familiar plaint that the details of an alleged fraud lie in defendant's ken has no convincing ring when the details at issue are the identities of documents that have been

widely disseminated to and assimilated by the investing public."), *aff'd*, 576 F.2d 465 (2d Cir.1978). This allegation is dismissed without prejudice.

### e) *Consulting Fees*

Plaintiffs seem to allege a misrepresentation in the "most recent CET Form 10K" with respect to the full-time employment status of defendant Allen. (*See* first amended complaint ¶¶ 102–104.) However, plaintiffs do not indicate when exactly CET's most recent 10K was filed. Because this allegation is not pleaded with sufficient particularity within the meaning of Rule 9(b), it must be dismissed.[10]

### III

The fourth claim for relief alleges violations of RICO. *See* 18 U.S.C. §§ 1962(c) & (d); *id.* § 1964(c). The alleged predicate acts are mail fraud, wire fraud, and the alleged securities violations. As demonstrated above, plaintiffs have failed to properly allege any misrepresentations or omissions by defendants that could have been relied upon, or would have been material to, plaintiffs in deciding to purchase shares in CET. Thus, as currently pleaded, no securities violations can constitute the predicate acts underlying plaintiffs' alleged RICO claim.

A RICO plaintiff who alleges a pattern of racketeering activity based upon predicate acts of fraud must plead the alleged fraudulent acts with sufficient specificity to satisfy Fed.R.Civ.P. 9(b). *See Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1400–01 (9th Cir.1986); *see also Occupational–Urgent Care Health Systems, Inc. v. Sutro & Co., Incorporated*, 711 F.Supp. 1016, 1019 (E.D.Cal.1989). Plaintiffs must also allege but-for and proximate causation in order to establish a civil RICO claim. *See Holmes v. Securities Investor Protection Corp.*, —— U.S. ——, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1312 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993). Thus, there must be some causal link between the

---

**10.** Plaintiffs may replead this allegation only if CET's most recent Form 10–K was filed in time

for plaintiffs Chenus, Grim, or Veltre to rely on any misrepresentation contained in it.

alleged mail fraud and wire fraud and the harm suffered by plaintiffs.

The allegations of mail fraud and wire fraud in the first amended complaint are pleaded in wholly inadequate fashion. Plaintiffs have not pleaded with any particularity how and when defendants used the wires and mails to defraud plaintiffs. In addition, many allegations are impermissibly made solely upon information and belief. *See Sutro,* 711 F.Supp. at 1020. Finally, the civil RICO claim is improperly pleaded because plaintiffs have failed to allege but-for and proximate causation. *See, e.g., Imagineering,* 976 F.2d at 1312 (affirming dismissal of RICO claim where plaintiffs did not adequately allege proximate causation). Because plaintiffs' civil RICO claim is not properly pleaded under Rule 9(b), it must be dismissed.

## IV

■ Because all federal claims have been dismissed, the court declines to exercise supplemental jurisdiction over the state claims, most of which share the same infirmities as the federal claims. The state law claims are dismissed. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## V

■ Several defendants have moved for sanctions under Fed.R.Civ.P. 11 and for attorneys' fees under § 11(e) of the '33 Act, codified at 15 U.S.C. § 77k(e). Defendants' motions are well taken.

Former Rule 11 of the Federal Rules of Civil Procedure required that "[e]very pleading, motion, and other paper of a party represented by an attorney ... be signed by at least one attorney of record." This signature

> constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for

> any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading ... is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading ..., including a reasonable attorney's fee.

*Id.* Rule 11 sanctions are imposed on the basis of objective conduct, not on the basis of a party's subjective bad faith. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 548, 550, 111 S.Ct. 922, 932, 933, 112 L.Ed.2d 1140 (1991). This objective standard applies to legal theories, as well as facts. *See Mir v. Little Co. of Mary Hosp.,* 844 F.2d 646, 653 (9th Cir.1988) (affirming grant of Rule 11 sanctions on ground that no competent lawyer would believe that the cases the attorney relied on actually supported his position). The "reasonable inquiry" requirement applies separately to each distinct claim in a complaint or other pleading. *See Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1363 (9th Cir.1991) (en banc) (overruling *Murphy v. Business Cards Tomorrow, Inc.,* 854 F.2d 1202 (9th Cir.1988), which had allowed "a party that has one non-frivolous claim [to] pile on frivolous allegations without a significant fear of sanctions").

Section 11(e) of the '33 Act provides that if a claim brought under the '33 Act, such as a claim under §§ 12(2) or 15, is "without merit," the court may award attorneys' fees when defendants prevail. 15 U.S.C. § 77k(e). Section 11(e)'s "without merit" standard is less difficult to meet than Rule 11's "frivolous" requirement. *Western Fed. Corp. v. Erickson,* 739 F.2d 1439, 1444 (9th Cir.1984) ("The 'without merit' standard ... encompasses claims and defenses that ... border on the frivolous."); *see also Layman v. Combs,* 994 F.2d 1344, 1353 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993).

Many of the allegations of federal securities violations in the first amended complaint are patently frivolous and completely without merit. It is apparent that plaintiffs' counsel failed to conduct the simple research to discover that: (1) all but three federal securities claims relating to purchases of CET shares were absolutely barred by the relevant periods of limitations; (2) the allegedly misleading CET offering circulars disclosed the multi-year term of the B & B management agreement, which plaintiffs alleged was fraudulently concealed; (3) most plaintiffs could not have relied upon the alleged misrepresentations or have been misled due to the alleged omissions because they purchased their CET shares prior to the occurrence of the alleged misrepresentations and omissions; and (4) no defendant is a "seller" within the meaning of § 12(2) of the '33 Act with respect to the three purchases of CET shares that were made within three years of the filing of this action. Plaintiffs' oppositions to defendants' motions for dismissal are also sanctionable to the extent they contain allegations that any plaintiff participated in a CET dividend reinvestment program within three years of the filing of this action. Had plaintiffs' lawyers exercised diligence, they would have discovered several publicly available documents indicating that dividend reinvestment in CET ended in 1989.

Plaintiffs' attorneys have not argued, nor can they argue, that the above-described lapses were reasonable under the circumstances. Defendants motions for sanctions under Fed.R.Civ.P. 11 and § 11(e) of the '33 Act therefore are granted. The court finds that the appropriate sanction is a grant of defendants' attorneys fees reasonably incurred in defending the federal securities claims in this case.

### VI

Plaintiffs' claims under §§ 12(2) and 15 of the '33 Act are dismissed with prejudice. Plaintiffs' 10b–5 claim is dismissed partially with prejudice and partially without prejudice. The civil RICO claim is dismissed without prejudice. The court declines to exercise supplemental jurisdiction over plaintiffs' state law claims. Such claims are dismissed for lack of subject matter jurisdiction. Defendants' motions for sanctions under Fed. R.Civ.P. 11 and § 11(e) of the '33 Act are granted.

IT IS SO ORDERED.